Revised April 29, 1999

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 97-60077

CAROLYN S. WATTS,

Plaintiff-Appellant,

versus

THE KROGER COMPANY; ARTHUR BULLINGTON,

Defendants,

THE KROGER COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi

March 17, 1999

Before HIGGINBOTHAM and STEWART, Circuit Judges, and WALTER,[*] District Judge.

ON REHEARING

CARL E. STEWART, Circuit Judge:

Since the panel opinion was issued in this case, see Watts v. Kroger, 147 F.3d 460 (5th Cir.

1998) (5th Cir. 1998), the Supreme Court handed down opinions in Burlington Ind. v. Ellerth, 524

U.S. 742, 118 S.Ct. 2257 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275

(1998).  Counsel for all parties submitted supplemental briefing on the impact of the Supreme Court

_____

[*]District Judge of the Western District of Louisiana, sitting by designation.

opinions on this case. Because the Supreme Court's decisions affect the reasoning and partially affect the result in this case, we sua sponte withdraw our prior opinion and substitute the following.

Plaintiff Carolyn Watts filed suit in district court alleging sexual harassment and retaliation against defendants Kroger and Arthur Bullington, her supervisor, individually. On appeal, Watts challenges the district court's grant of the Kroger Co.'s ("Kroger's") Motion for Summary Judgment as well as its partial grant of Kroger's Motion to Strike. We AFFIRM in part and REVERSE in part.

## I.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Carolyn Watts began her employment with the Kroger Co. ("Kroger") in February 1990 as a part-time employee in the flower shop of the company's Southaven, Mississippi grocery store. Sometime thereafter, she moved to the produce department where she continued to work on a part-time basis. Beginning in March 1994, Watts began working as a full-time produce clerk. Watts' supervisors in the produce department were John Moore, Glen Rice, and Arthur Bullington, respectively.

Watts claims that upon Bullington's arrival at the store in 1993, he subjected her to "an invidious campaign of sexual harassment." Specifically, Watts alleges that Bullington made inappropriate jokes both to and about her, continually made sexual innuendos to her, and that he once grabbed her buttocks as well as touched her in other ways on several other occasions.

Watts insists that Bullington's harassment intensified in the spring of 1994. She claims that Bullington began following her through the store calling her a "homewrecker" and saying that she

2

was "homeless" in front of other employees, vendors and customers.[1] Bullington admits to making such comments.

In response to the increased harassment, Watts met with Kroger Store Manager Ricky Hayles to complain about Bullington on July 7, 1994. Watts was crying and was otherwise visibly upset during the meeting. She told Hayles that Bullington was making comments about her personal life and that she wanted the conduct stopped. Hayles allegedly spoke to Bullington that same day and told him to stop. Kroger claims that after this meeting, Bullington never again made any sexual comments to Watts and that Watts was never again subjected to any sexual advances.

Watts claims that though Hayles spoke to Bullington, Hayles did not notify the Human Resources Department about the situation. Watts suggests that within a week of her complaint to Hayles about Bullington, her work schedule was altered. She and Bullington had arranged her schedule to allow Watts to work a second job at Federal Express. Watts claims that her schedule was altered to such an extent that she was forced to give up her position at Federal Express.

On July 19, 1994, Watts filed a union grievance alleging sexual harassment. She insists that the store manager was immediately provided a copy of the grievance and understood that human resources would have known about her allegations. Still, Humbles claims not to remember whether he was notified of the grievance promptly. He appears not to have begun an investigation into such matter until at least September 1994. Kroger investigated the complaint, but determined that Watts had not substantiated her claim of sexual harassment. Despite this finding, Kroger verbally

---

[1]These comments concern the fact that Watts was allegedly involved in an extramarital affair with Glen Rice—Watts' supervisor from 1990 to 1993, who Bullington replaced as Produce Manager. The "homeless" comment concerns the fact that in May 1994, Watts allegedly moved out of her home and left her husband and children for a period of time.

reprimanded defendant Bullington and offered to transfer him or Watts to another store. Kroger also offered to transfer the plaintiff to another department within the Southaven store. Watts filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on November 2, 1994 alleging that Bullington sexually harassed her by subjecting her to a hostile work environment. In addition, she claimed Bullington and Kroger management retaliated against her in violation of Title VII. Watts then filed suit in federal court making those same allegations along with claims under state law.

## II.

### KROGER'S MOTION TO STRIKE

We first address Watts' challenge that the district court erred in granting Kroger's Motion to Strike several unsworn statements submitted by Watts. Watts attached to her Motion in Opposition to Summary Judgment several handwritten statements that she had collected from her co-workers. The statements were signed, but were not sworn, notarized, or in the form of affidavits. The district court held that the statements were not competent summary judgment evidence for the purposes of FED. R. CIV. P. 56(e), and that the statements did not comply with federal requirements for unsworn declarations.

The district court relied on the decision in Duplantis v. Shell Offshore, Inc., 948 F.2d 187 (5th Cir. 1991) to reject the statements Watts presented. In Duplantis, this court noted "that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence." Id. at 191. Watts argues that if the touchstone for consideration is the ultimate admissibility of the evidence, the district court erred by not considering the statements at all. Offering no support from the Federal

4

Rules of Evidence or relevant case law, she suggests that the documents were authenticated through her affidavit and properly relate admissions made by Bullington and others. She further argues that to ignore such evidence would amount to a "grave injustice" on the part of this court.

This court reviews the district court's decision to strike lay opinion testimony under an abuse of discretion standard. Pedraza v. Jones, 71 F.3d 194, 197 (5th Cir. 1995). We hold that the district court did not abuse its discretion in striking the statements. Because the statements were unsworn and were not presented to the court in a form required by Rule 56 we cannot say that the district court acted outside of its boundaries. Though Watts' argument that such a conclusion elevates form over substance may be intellectually compelling, it is of no practical merit to this court. Rule 56 clearly prescribes the manner in which such documents must be presented to the court. Without support for her argument that the statements are nonetheless admissible, we find Watts' contention groundless.

## III.

### SEXUAL HARASSMENT CLAIM[2]

Since the district court granted Kroger's motion for summary judgment, the Supreme Court handed down Burlington Ind. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275 (1998). We conclude that the Supreme Court's decisions require us to reverse the district court's disposition of Watts' sexual harassment claim.

---

[2]Previously we described this claim as a "hostile work environment" claim. After the Supreme Court's decisions in Burlington and Faragher, it appears that attaching this label to the claim in a sense prejudges the result. To the extent it matters how the claim is labeled, it is more accurate to generically describe the claim as one of sexual harassment, and wait until deciding there does not exist a tangible employment action before referring to it as a hostile work environment claim. See Burlington, 524 U.S. at __, 118 S.Ct. at 2264-65. On the other hand, we utilize the term "quid pro quo" if the case involves a tangible employment action. See id.

5

When confronted with a sexual harassment claim alleging hostile work environment, we previously utilized the following five-factor test to determine if the plaintiff had established a viable cause of action:

(1) The employee belongs to a protected group;
(2) The employee was subject to unwelcome sexual harassment;
(3) The harassment complained of was based upon sex;
(4) The harassment complained of affected a "term, condition or privilege of employment," i.e., the sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment; and
(5) Respondent superior, i.e., that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

Jones v. Flagship International, 793 F.2d 714, 719-720 (5th Cir. 1986). With the release of Burlington and Faragher, however, this test is modified so that employees bringing a Title VII sexual harassment case alleging that a supervisor, with immediate (or successively higher) authority over the employee, harassed the employee need only satisfy the first four elements of the test outlined above.[3] Once the plaintiff employee makes this showing, an "employer is subject to vicarious liability to a victimized employee." Faragher, 524 U.S. at __, 118 S.Ct. at 2292-93.

In response to this cause of action, the employer can raise an affirmative defense to liability or damages, so long as the supervisor's harassment did not culminate in a "tangible employment action" against the employee. Faragher, 524 U.S. at __, 118 S.Ct. at 2293. If there was a tangible employment action, the employer is not entitled to attempt to raise the affirmative defense. See id. Alternatively, "[w]hen no tangible employment action is taken, a defending employer may raise an

---

[3]In cases where the harasser is a co-worker, as opposed to a supervisor, the full test outlined in Jones v. Flagship International, 793 F.2d 714, 719-720 (5th Cir. 1986) is applicable. See Williamson v. City of Houston, 148 F.3d 462, 464 (5th Cir. 1998) (applying fifth factor).

6

affirmative defense to liability or damages, subject to proof by a preponderance of the evidence." Id. That affirmative defense consists of two prongs, both of which the employer must fulfill: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id.

The district court granted summary judgment on Watts' sexual harassment claim because Watts was not able to provide evidence sufficient to create a genuine issue of material fact as to the fifth element in the Jones test. As this element is no longer required, we assume that, for purposes of this appeal, plaintiff has established a cause of action in this case. We must nonetheless affirm the district court's decision if there is another ground upon which summary judgment must be granted. See, e.g., United States v. 14301 Gateway Blvd. West, 123 F.3d 312, 313 (5th Cir. 1997) (per curiam). Noting at the outset that a district court's grant of a summary judgment motion is reviewed de novo, Hirras v. National R.R. Passenger Corp., 95 F.3d 396, 399 (5th Cir. 1996), we now turn to the possibility that Kroger's could raise an affirmative defense.

A.    **Tangible Employment Action**

We hold that Kroger can attempt to raise the Burlington/Faragher affirmative defense because it did not take a tangible employment action against Watts. In her retaliation claim, Watts brought "to our attention the fact that Bullington changed her work schedule and asked her to perform tasks which she had not previously been asked to perform." Kroger concedes for purposes of summary judgment that her "supervisor's harassment culminate[d]" in these employment actions, see Burlington Ind., 524 U.S. at __, 118 S.Ct. at 2270, and that this injury "could not have been inflicted

7

absent the agency relation." Id. at 2268. Kroger instead relies on the claim that Bullington's acts do not amount to "a significant change in employment status" and so cannot be described as a tangible employment action.[4] Id.

We agree. As examples of a change in employment status, the Court listed "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. Simply changing one's work schedule is not a change in her employment status. Neither is expanding the duties of one's job as a member of the produce department to include mopping the floor, cleaning the chrome in the produce department, and requiring her to check with her supervisor before taking breaks. See Reinhold v. Virginia, 151 F.3d 172, 175 (4th Cir. 1998) (being assigned extra work is not a change in employment status). Thus, Kroger is entitled to attempt to raise the Burlington/Faragher affirmative defense.

**B.      Affirmative Defense**

Upon further review, we conclude that Kroger cannot show, as a matter of law, that it is entitled to the Burlington/Faragher affirmative defense. The second element of that defense requires that Kroger show that the "plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Burlington, 524 U.S. at __, 118 S.Ct. at 2270. Kroger concedes that Watts filed a union grievance on July 19, 1994. It argues instead that Watts acted "unreasonably" when she waited to complain.

---

[4]We do not reach the question of whether "tangible employment action," as defined by Burlington Ind., 524 U.S. at __, 118 S.Ct. at 2268-69, is identical to our definition of an "adverse employment action" found in Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997), cert. denied 118 S.Ct. 336 (1997).

There is at least a genuine issue of material fact such that a reasonable juror could decide against Kroger on this point. Watts alleges that her supervisor's harassment intensified in the spring of 1994. A jury could find that waiting until July of that same year before complaining is not unreasonable. Cf. Fall v. Indiana Univ. Bd. of Trustees, 12 F.Supp.2d 870, 884 (N.D. Ind. July 23, 1998) ("In other words, the Court cannot say as a matter of law that a sexual assault victim who waits three months to report the incident, under these circumstances, unreasonably failed to take advantage of the University's anti-harassment procedures.").

Kroger also argues that Watts fails this element of the affirmative defense because she filed a union grievance rather than going through Kroger's sexual harassment policies. This argument is without merit. We find that, under the facts and circumstances of this case, Watts' filing of a union grievance comports with the Burlington/Faragher rubric. The affirmative defense allows the Plaintiff employee to take corrective opportunities provided by the employer "or to avoid harm otherwise." Burlington, 524 U.S. at __, 118 S.Ct. at 2270. Taking advantage of the union grievance procedure falls within this language because both the employer and union procedures are corrective mechanisms designed to avoid harm. Thus, Kroger cannot show as a matter of law that it satisfies the Burlington/Faragher affirmative defense. We therefore reverse the district court's decision as to Watts' hostile work environment claim.

## IV.

### RETALIATION CLAIM

Lastly, we consider the district court's dismissal of Watts' retaliation claim. Watts argues that

the district court erred when it held that she did not engage in activity protected by Title VII until July 19, 1994. Watts insists that her informal complaints to Bullington about his alleged harassment prior to her meeting with Hayles on July 7, 1994 amounted to protected activity. She further maintains that her July 7, 1994 complaint constituted protected activity. Finally, she argues that Bullington's knowledge of her complaints to him should be imputed to Kroger.

For the first time on appeal, Watts argues that her complaints to Bullington prior to July 7, 1994 constituted actions protected by Title VII. Because Watts did not raise this argument in opposition to Kroger's Motion for Summary Judgment, the issue is not properly before us now. Tel-Phonic Services, Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1142 n.8 (5th Cir. 1992). As for her July 7, 1994 complaint to Hayles, we find that it did not constitute protected activity pursuant to Title VII. Watts herself admits that in her July 7, 1994 complaint, she did not report any sexual harassment and that she did not make any such allegation prior to July 19, 1994. Because the record confirms this fact, the district court was correct in holding that no reasonable juror could find that she was engaged in protected activity prior to July 19, 1994.

Watts argues that the district court erred in holding that the alleged actions about which she complained did not rise to the level of adverse employment actions. She suggests that following her July 7, 1994 meeting with Hayles, she was subjected to retaliation. Specifically, she brings to our attention the fact that Bullington changed her work schedule and asked her to perform tasks which she had not previously been asked to perform. She avers that she need not suffer an ultimate employment decision to state a claim for retaliation under Title VII.

The district court was correct in its determination that Watts' allegations do not rise to the level of an adverse employment action. Mattern v. Eastman Kodak Co., 104 F.3d 702 (5th Cir.

10

1997).[5] In Mattern, we held that "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon these ultimate decisions." Id. at 707. In explaining that the actions Watts complained of did not constitute adverse employment actions, the district court in the instant matter properly defined such acts as including " 'hiring, granting leave, discharging, promoting, and compensating.' " Id. (internal quotation omitted).

Watts concedes that neither the change in her schedule nor the new tasks which she was given affected her pay. We have held, along with many of our sister circuits, that employment actions are not adverse where pay, benefits, and level of responsibility remain the same. Id. at 708-10. Thus, our circuit law forecloses Watts' arguments that changes to her job assignments and other alleged acts by Bullington rose to the level of adverse employment decisions.

The district court properly focused on an important defect in Watts' retaliation claim: the lack of evidence on the causation element. At the time Kroger allegedly began retaliating against Watts, Kroger did not know Watts had engaged in any protected activity. The district court correctly held that Kroger could not retaliate against Watts for making sexual harassment complaints, because it did not know she had engaged in protected activity. Long v. Eastfield College, 88 F.3d 300, 305 n. 4 (5th Cir. 1996). The record bears out that Watts' schedule was changed for the first time on July 17, 1994. She concedes that she did not complain of any alleged sexual harassment until July 19, 1994.

_____

[5]Watts argues that the Court's discussion in Burlington regarding a tangible employment action renders suspect our decision in Mattern v. Eastman Kodak, 104 F.3d 702, 707 (5th Cir.) (defining "adverse employment actions" for purposes of a Title VII retaliation claim as "ultimate employment actions"), cert. denied 118 S.Ct. 336 (1997). We need not reach this issue, however, because even if Burlington lowers the bar as to what qualifies as an adverse employment action, Watts cannot satisfy the definition of a tangible employment action as defined by Burlington.

Watts' speculation that the such action constituted retaliatory conduct is not sufficient to rebut Kroger's proffered non-discriminatory reason for changing her schedule.

## CONCLUSION

For the reasons set forth above, we AFFIRM the district court's decision to partially grant Kroger's motion to strike, and REVERSE in part and AFFIRM in part the district court's grant of Kroger's Motion for Summary Judgment.