**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-40686
Summary Calendar

CAROLYN C. LOPEZ,

Plaintiff-Appellant,

VERSUS

WILLIAM J. HENDERSON, Postmaster General,
United States Postal Service; ET AL.,

Defendants,

WILLIAM J. HENDERSON, Postmaster General,
United States Postal Service,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
M-95-CV-13
M-95-CV-96

July 27, 1999

Before JOLLY, SMITH, and WIENER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Carolyn C. Lopez appeals the district court's grant of summary judgment in favor of Defendant-Appellee William J. Henderson, Postmaster General of the United States Postal Service. The district court rejected Lopez's allegations of racial and sex discrimination in violation of Title VII of the

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, <u>et seq.</u>
Agreeing <u>de novo</u> with the district court, we affirm.

I.

FACTS AND PROCEEDINGS

Lopez is a white woman who was employed by the United States Postal Service as a rural letter carrier with the Mercedes, Texas post office. Lopez claims that the Postal Service treated her differently on the bases of her race and her sex. She further asserts that the Postal Service retaliated against her for filing charges of discrimination based on these alleged incidents. Lopez grounds these claims on the incidents described below.

A.   Lopez's Disparate Treatment Claims

1.   Denial of auxiliary assistance and breach of settlement agreement

Lopez states that she was denied auxiliary assistance[2] on three occasions over several years because she is a white woman. Lopez first made, and was denied, a request for auxiliary assistance in October of 1988. In August of 1990, Lopez filed an EEO complaint, alleging discriminatory treatment because a male letter carrier had, under similar circumstances, requested assistance in January of 1990, and, unlike her, had received it. This particular dispute was resolved in a settlement agreement entered into between Lopez, her supervisor, Antonio Echavarria, and

_____

[2]   On days when a mail carrier has an excessive volume of mail to deliver, the carrier may request assistance before departing on his route. In the Postal Service, this is called a request for auxiliary assistance.

2

the Mercedes Postmaster, Robert Pantoja.

In September of 1993, Lopez again asked for auxiliary assistance, and again her request was denied. Alleging that the Postal Service was in breach of the settlement agreement, Lopez filed a notice of the breach with the Postal Service in October of 1993, claiming discriminatory treatment. The Postal Service, in November of 1993, declined to reinstate her original August 1990 complaint. On Lopez's appeal, the EEOC, in February of 1994, ordered that the Postal Service comply with the settlement agreement.

In February of 1995, Lopez once again requested, and was again denied, auxiliary assistance. She requested EEO counseling, and received notice of right to file in April of 1995. She filed an EEO complaint that same month, and the Postal Service dismissed the complaint in June of 1995, noting that Lopez had already made this complaint the subject matter of a district court action.

2.   Letters concerning attendance

Lopez also claims that the Postal Service's placing in her personnel file of warning letters concerning her attendance constituted discriminatory treatment on the bases of her race and her sex. In September of 1993, the Postal Service placed Lopez on restricted sick leave, meaning that if she took sick leave she was required to provide proof that she had visited a doctor. According to the Postal Service, Lopez regularly took sick leave just before and just after weekends and holidays. In October of 1993, Pantoja issued Lopez a warning concerning her irregular attendance because,

3

despite the restriction, she had continued to take sick leave immediately preceding and following weekends. Lopez sought EEO counseling in November of 1993, and, in December of 1993, the EEO issued Lopez a notice of right to file, which she did. In accordance with a settlement agreement between the Postal Service and the National Rural Letter Carriers Association, the Postal Service removed the warning letter from Lopez's personnel file. After the removal of the letter, the Postal Service dismissed the EEO complaint on the basis of mootness. Lopez did not appeal to the EEOC.

According to the Postal Service, Lopez continued to take sick leave immediately before and after weekends and holidays. Pantoja issued Lopez another warning letter in April of 1994, and Lopez again sought EEO counseling. In June of 1994, she received notice of her right to file an EEO complaint. She did so, and in response, the Postal Service removed the letter from her personnel file. The Postal Service subsequently dismissed the EEO complaint, and again Lopez did not appeal to the EEOC.

3. Payment of compensation to a substitute carrier following vehicular breakdown

Lopez also contends that she was treated differently from other employees when she had a vehicular breakdown. Specifically, Lopez claims that the Postal Service did not inform her that she need not compensate a substitute carrier directly when her own vehicle broke down, as the substitute would be paid through the payroll system. When Lopez's vehicle broke down in October of

4

1993, a substitute was called in to complete the route. The Postal Service paid the substitute for the day, and deducted a day of annual leave for Lopez. She claims that she paid the substitute directly for the day. Lopez sought EEO counseling later that month, claiming that a male letter carrier had suffered a vehicular breakdown in September of 1993 but had not been required to compensate his substitute. Lopez received notice of her right to file a complaint, and did so with the Postal Service in December of 1993. The Postal Service denied the claim in April of 1995, and Lopez did not appeal to the EEOC.

B.    Lopez's Retaliation Claims

1.    Four-mile mileage reduction

Lopez alleges that the Postal Service reduced her daily mileage by four miles in retaliation against her for filing the foregoing EEO complaints. As compensation for rural route carriers is determined by a formula that includes mileage, this reduction adversely affected Lopez's pay.

Before the spring of 1995, the Postal Service required all Mercedes rural carriers to return to the station during the noon hour to drop off the outgoing mail that they had picked up during the morning. This outgoing morning mail was then forwarded to the McAllen, Texas station during the noon hour so that the mail processing machinery at the McAllen station would have a sufficient volume of mail to keep those machines operating throughout the day.

According to the Postal Service, however, in the spring of 1995, the mail volume in McAllen proper had grown sufficiently

5

large that noon forwarding of the Mercedes morning mail was no longer needed to keep the McAllen machines in constant use. Accordingly, the Postal Service stopped requiring Mercedes rural carriers to return to the station at noon to drop off outgoing mail, and this resulted in a reduction in mileage for all such carriers. As an exception, the Postal Service did permit one carrier to continue making a noon drop-off during the winter season because the volume of outgoing mail he picked up in the morning during that season was so great that he could not see out of the rear of his vehicle. Despite the Postal Service's contention that, except for that single carrier, the mileage reduction affected all rural carriers equally, Lopez insists that she was the only employee who suffered a loss of mileage or reduction in pay. Lopez did not file an EEO complaint concerning this matter.

## 2. Communications with physician

Lopez also claims that, in retaliation for her filing of the EEO complaints, Pantoja and Echavarria called her doctor without her permission. She alleges that these calls prompted her doctor to discontinue treating her.[3]

## C. Procedural History

The facts underlying this matter produced two separate lawsuits in the district court, which were later consolidated. Lopez first filed suit in the United States District Court for the

---

[3] In 1996, Lopez was allegedly diagnosed with lateral epicondylitis, a soreness in her right arm. Lopez went through the worker's compensation process and received documentation showing she could not perform repetitive motions.

Southern District of Texas, McAllen Division, in January, 1995. She filed a second suit in the same district court in April of that year. That court consolidated these two cases in July. The Postal Service moved for summary judgment. The district court granted the motion and entered a judgment dismissing Lopez's case in April, 1998. Lopez timely filed a notice of appeal.

## II.

## ANALYSIS

A.  Standard of Review

We review a district court's grant of summary judgment de novo.[4] Summary judgment is appropriate if the record, when viewed in the light most favorable to the non-moving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5] In this employment discrimination case, our focus is on whether there exists a genuine issue of material fact regarding intentional discrimination by the Postal Service against Lopez.[6]

B.  Merits

We determine whether a genuine issue of material fact exists as to Lopez's disparate treatment and retaliation claims by

---

[4]    Lawrence  v.  University of Texas Medical Branch at Galveston, 163 F.3d 309, 311 (5th Cir. 1999).

[5]    FED. R. CIV. P. 56(c).

[6]    See Lawrence, 163 F.3d at 312; Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996).

resorting to the same evidentiary framework.[7] The burden-shifting structure applicable to Title VII disparate treatment is equally applicable to Title VII unlawful retaliation cases.[8] As Lopez has not proffered any direct evidence of discrimination, she must show such discrimination indirectly.[9] First, Lopez must establish a prima facie case.[10] To establish a prima facie case of disparate treatment, Lopez must show that (1) she was a member of a protected class under Title VII; (2) her performance of the elements necessary for her job was satisfactory; (3) she was subjected to an adverse employment action; and (4) others similarly situated were more favorably treated.[11] To establish a prima facie case of retaliation, Lopez must demonstrate that (1) she engaged in an activity protected by Title VII; (2) she was subject to an adverse employment action; and (3) there is a causal link between the

---

[7] Because we subject this case to this form of analysis, and conclude that Lopez did not raise a genuine issue of material fact as to her disparate treatment and retaliation claims, we need not address the Postal Service's contention that summary judgment was proper because, as to each of her claims, Lopez had either failed to exhaust her administrative remedies or the claim was moot. Although the Postal Service raised this issue in the district court in its motion for summary judgment, the district court did not grant the motion on these grounds. For purposes of our analysis, we assume, arguendo, that, as to each of her claims, Lopez exhausted her administrative remedies and that none of her claims was moot.

[8] Long, 88 F.3d at 304.

[9] See Lawrence, 163 F.3d at 312.

[10] Id.; Long, 88 F.3d at 304.

[11] See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 802 n.13 (1973); Urbano v. Continental Airlines, 138 F.3d 204, 206 (5th Cir. 1998).

8

adverse employment action and the protected activity.[12]

If Lopez successfully establishes a prima facie case, the defendant -- the Postal Service -- must articulate legitimate, non-discriminatory or non-retaliatory reasons for the challenged employment actions.[13] If the Postal Service successfully articulates such reasons, the inference of discrimination raised by the prima facie case disappears, and Lopez must prove, by a preponderance of the evidence, that the reasons articulated by the Postal Service are pretextual and that the Service intentionally discriminated.[14]

In the instant case, all but one of Lopez's claims clearly do not involve occurences that rise to the level of "adverse employment actions." Therefore, Lopez could not establish a prima facie case on these claims. "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions."[15] "[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same."[16] We have previously noted that "[u]ltimate employment decisions include acts such as hiring, granting leave, discharging,

---

[12]   Burger v. Central Apartment Management, Inc., 168 F.3d 875, 878 (5th Cir. 1999).

[13]   See Lawrence, 163 F.3d at 312; Long, 88 F.3d at 304-305.

[14]   See Lawrence, 163 F.3d at 312; Long, 88 F.3d at 305.

[15]   Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995).

[16]   Watts v. Kroger Co., 170 F.3d 505, 512 (5th Cir. 1999).

promoting, and compensating".[17] Here, all of the Postal Service's alleged transgressions relating to Lopez's disparate treatment claims -- its refusal to grant Lopez's requests for auxiliary assistance, its alleged breach of the 1991 settlement agreement, its decision to issue letters of warning concerning Lopez's attendance, and its treatment of Lopez in relation to her vehicular breakdown -- were not adverse employment actions. Neither was the placement of telephone calls to Lopez's doctor by her supervisors, allegedly in retaliation for her filing of discrimination complaints. As such, Lopez could not establish a prima facie case on these claims, so summary judgment was proper.[18]

We thus need only address Lopez's one remaining claim, that the Postal Service reduced her mileage in retaliation for filing discrimination complaints. Even assuming, without deciding, that the Postal Service's reduction of Lopez's mileage constituted an adverse employment action and that Lopez properly established a

_____

[17]    Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997) (citation and internal quotation omitted).

[18]    Lopez contends that the district court erred in determining that she had not established a prima facie case because it employed a standard rendered obsolete in light of the Supreme Court's decision in Burlington Industries, Inc. v. Ellerth, 118 S. Ct. 2257 (1998), a sexual harassment case. In Ellerth, the Supreme Court noted that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. at 2268. We need not reach this issue in the instant case, however. Even if Ellerth "lowers the bar" regarding that which qualifies as an adverse employment action, Lopez's disparate treatment claims and retaliation claim regarding the placement of telephone calls to her doctor do not, in any event, satisfy the Ellerth definition of a tangible employment action. See Watts, 170 F.3d at 512 n.5.

10

prima facie case of retaliation on this claim, the Postal Service proffered a legitimate, non-retaliatory reason for the action that it took, and Lopez failed to create a genuine issue of fact that the Postal Service's reason was pretextual or that the Service unlawfully retaliated against her.[19]  According to the Postal Service, it eliminated the noon hour dispatch for all rural carriers (except for the one who collected so much mail in the morning during the winter season that he could not see out the back of his vehicle) because it was no longer necessary.  The non-retaliatory reason advanced by the Postal Service is that, by 1995, there was such a volume of mail generated in McAllen proper that additional mail from Mercedes was no longer needed just to keep the McAllen machines running full time.

In light of the Postal Service's proffered legitimate, non-retaliatory reason, Lopez had to raise a genuine issue of fact as to whether the Postal Service unlawfully retaliated against her.[20] This she has not done.  Even if Lopez had shown that the Postal Service's proffered reason was pretextual, (which she has not shown), she would still have to show that the Postal Service intentionally discriminated against her on the basis of her race or sex.[21]  A plaintiff's evidence of pretext must create an inference

---

[19]    See Long, 88 F.3d at 308.

[20]    Long, 88 F.3d at 308.

[21]    See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 514-16, 519 (1993).  In Hicks, the Supreme Court noted that "[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." Id. at 519.

11

of discrimination.[22]  To create a jury question, Lopez's evidence must be "substantial".[23]  In the instant case, Lopez has proffered no evidence that raises even an inference of pretext or of retaliatory motive on the part of the Postal Service.  Alone, Lopez's subjective belief that she was retaliated against because she is a white female is not sufficient to raise such an inference.[24]  Absent evidence of retaliatory motive, Lopez has failed to raise the requisite material issues of fact concerning Postal Service retaliation against her to warrant a trial. Consequently, summary judgment for the defendant on this retaliation claim was proper.

## III.

### CONCLUSION

On the strength of our de novo review of the summary judgment record, we agree with the district court and conclude that it did not commit error by granting the Postal Service's motion for summary judgment.  For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[22]  See Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 994-95 (5th Cir. 1996) (en banc).

[23]  See id. at 993.

[24]  See Lawrence, 163 F.3d at 313 (quoting Elliott v. Group Medical & Surgical Service, 714 F.2d 556, 567 (5th Cir. 1983) ("[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief.").

12