IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-31368
Summary Calendar
_____


NANCY MCGRATH,

                                        Plaintiff-Appellant,

                        versus

STATE OF LOUISIANA, on behalf of the
Department of Health & Hospitals, et al.


                                        Defendants-Appellees.
_____

Appeal from the United States District Court for the
Western District of Louisiana, Lafayette-Opelousas
USDC No. 99-CV-878
_____
April 18, 2001

Before JOLLY, DAVIS, and STEWART, Circuit Judges.

PER CURIAM:[*]

The question presented on appeal is whether the district court
erred in granting summary judgment for the defendants in this Title
VII sex discrimination case.  We affirm.

I

Nancy McGrath, a registered nurse, was employed by the State

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

of Louisiana's Department of Health and Hospitals from September 1993 to December 1999. McGrath usually worked the "night shift" (11:30 p.m. to 8:30 a.m.) from Thursday through Sunday in a psychiatric unit.

The unit's written policies regarding sexual harassment prohibit the viewing of sexually-related materials that one's co-workers might reasonably find offensive. In April 1998, several of McGrath's co-workers began viewing an episode of the Jerry Springer television show in the nurses' day room. The topic of the day's show was "Wild Sex." When McGrath requested that her co-workers change the channel, they complied. But after her shift was over, McGrath discussed this incident with Glynn Bourque, the Registered Nurse Supervisor, who said that a syndicated television show was not the kind of sexually inappropriate material covered by the unit's policies. McGrath then complained to Margaret Wiles, the Director of Nursing at the psychiatric unit. Partially as a result of McGrath's complaint, Wiles ordered that the television set in the day room be turned off from 10:30 p.m. until 6:00 a.m.

McGrath alleges that Bourque became furious when he learned that McGrath had complained to Wiles about the Jerry Springer incident. Bourque told McGrath that he would no longer assist her in drawing blood or administering prescribed medications to patients. After McGrath complained about this change in their customary duties, Bourque was required to apologize and undergo

2

counseling. He then agreed to share blood-drawing duties with McGrath. Nevertheless, McGrath filed a discrimination complaint with the EEOC in August 1998.

In March 1999, McGrath received a performance evaluation. Although Bourque gave her a "very good" rating, her overall score dropped from 38 in 1998 to 29 in 1999. In comments attached to the evaluation, Wiles emphasized that "[t]he drop in [McGrath's] performance rating is not an indicator of a drop in her performance but rather a more effective and appropriate use of the evaluating tool." McGrath has not pointed to any adverse effects stemming from this performance evaluation.

In May 1999, McGrath filed the complaint before us. Because Glynn Bourque was named as a defendant, McGrath requested that the hospital change Bourque's work schedule so that McGrath and Bourque would not be working at the same time. In July 1999, Wiles sent a memo to McGrath informing her that she and Bourque would "rotate" on evening and night shifts. McGrath balked at this proposal, contending that she had worked the same schedule from 1993 to 1999 and had been "guaranteed" the night shift. McGrath failed to report for work after July 22, 1999. Her employment was terminated in December when her accrued sick leave had been exhausted.

In November 2000, the district court entered summary judgment for the defendants, concluding that the State of Louisiana was entitled to judgment as a matter of law on McGrath's Title VII

3

claims of a hostile work environment and unlawful retaliation. McGrath now appeals.[1]

## II

This court reviews a district court's grant of summary judgment *de novo*, applying the same substantive test set forth in Federal Rule of Civil Procedure 56.  Horton v. City of Houston, 179 F.3d 188, 191 (5th Cir. 1999).

## A

We begin with McGrath's "hostile work environment" claim.  To survive summary judgment, a plaintiff "must create a fact issue on each of the elements of a hostile work environment claim:  (1) [sexually] discriminatory intimidation, ridicule and insults that are;  (2) sufficiently severe or pervasive that they;  (3) alter the conditions of employment;  and (4) create an abusive working environment."  Walker v. Thompson, 214 F.3d 615, 625-26 (5th Cir. 2000).  McGrath has not met this burden.

The evidence of alleged discriminatory conduct is limited to these facts: (1) several co-workers were watching a Jerry Springer episode until McGrath asked them to change the channel; (2) Bourque refused to help McGrath administer medication after McGrath had complained to Wiles about the Jerry Springer incident and after Wiles had curtailed the nurses' television privileges; (3) at about

---

[1]Although both parties have requested oral argument, we have concluded that this appeal may be decided on the record before us.

4

this same time, "Bourque was verbal to co-workers in his negative statements concerning working with [McGrath]," although the substance of these comments is not clear; (4) although Wiles took corrective actions regarding Bourque's behavior, "the time delays in doing so are unjustifiable"; and (5) when McGrath requested that she and Bourque not work the same shift, Wiles decided to let McGrath and Bourque rotate on different shifts. On the record before us, we fail to see how this conduct can be described as discriminatory on the basis of sex.

Even if we assume that all of the alleged conduct was discriminatory, the conduct of which McGrath complains cannot possibly be considered "severe." We have pointed out, in the context of hostile environment cases, that Title VII "was only meant to bar conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace." Shepherd v. Comptroller of Public Accounts of State of Texas, 168 F.3d 871, 874-75 (5th Cir. 1999). In Shepherd, for example, the plaintiff complained that a co-worker had made several sexually suggestive comments, often tried to look down her clothing, touched and rubbed her arm, and twice invited her to sit on his lap during office meetings. Shepherd, 168 F.3d at 872. We held that this conduct, although "boorish and offensive," was *not* sufficiently severe to be actionable under Title VII. Id. at 874-75. Because McGrath's claims involve conduct that is even less

5

objectionable than that at issue in <u>Shepherd</u>, we must conclude as a matter of law that the conduct of Bourque and Wiles was not severe and hence not actionable.

B

We turn now to McGrath's retaliation claim. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). We have held that a retaliation claim has three elements: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. <u>Mattern v. Eastman Kodak Co.</u>, 104 F.3d 702, 705 (5th Cir. 1997).

McGrath's retaliation claim fails because she has not created a fact issue as to whether she suffered an adverse employment action. This court has made clear that "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." <u>Dollis v. Rubin</u>, 77 F.3d 777, 781-82 (5th Cir. 1995). We have defined "ultimate employment decisions" to include such acts as "hiring, granting leave, discharging, promoting, and compensating." <u>Mattern</u>, 104 F.3d at 707 (citations omitted). Bourque's short-lived decision to make

6

McGrath administer medications without his assistance and Wiles's decision to let McGrath and Bourque rotate shifts clearly do not constitute adverse employment actions.  See Watts v. Kroger Co., 170 F.3d 505, 510 (5th Cir. 1999).  Neither can McGrath's 1999 performance evaluation be considered an adverse employment decision.  Wiles pointed out that the evaluation did not indicate a drop in her performance, and McGrath has not alleged any adverse effect caused by this evaluation report.

## III

For the reasons stated above, McGrath did not create a genuine issue of material fact on either of her Title VII claims.  The summary judgment for the State of Louisiana is therefore

A F F I R M E D .