United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 15, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-60765
Summary Calendar
_____

DONALD GARNER

      Plaintiff - Appellant

  v.

ASHLEY FURNITURE INDUSTRIES INC

      Defendant - Appellee

_____

Appeal from the United States District Court
for the Northern District of Mississippi, Aberdeen
No. 1:03-CV-71-D-D
_____

Before KING, Chief Judge, and JONES and DENNIS, Circuit Judges.

PER CURIAM:[*]

    Plaintiff-Appellant Donald Garner sued his former employer alleging that he was denied a transfer in retaliation for past complaints of racial discrimination made against a third party. The district court granted his former employer's motion for judgment as a matter of law.  We AFFIRM.

_____

    [*]    Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

- 1 -

## I. BACKGROUND

### A. Factual Background

Plaintiff-Appellant Donald Garner, an African-American male, is a former employee of Gentry Furniture Gallery, Inc. ("Gentry"), a furniture manufacturer. On May 19, 1997, while employed by Gentry, Garner filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") alleging that Gentry discriminated against him based on his race. On August 14, 1997, Mike Hall, Gentry's Director of Human Resources, terminated Garner's employment for insubordination. Garner subsequently brought a wrongful discharge suit against Gentry, alleging that he was terminated in retaliation for his EEOC complaint.

In November 1998, Garner began working for Defendant-Appellee Ashley Furniture Industries, Inc. ("Ashley"), also a furniture manufacturer, at its plant in Ecru, MS. Garner was initially assigned to "stationary frames" work, but was subsequently transferred to the "motion line." In July 1999, Ashley purchased Gentry's factory in Ripley, MS. Following the purchase, Ashley decided to move its motion line production to the Ripley facility.

On August 17, 1999, the transferred employees reported for their first day of work at the Ripley plant. The former Ecru employees were greeted by Hall, who became Ashley's Human

Resources Manager at the Ripley plant as part of the acquisition. Hall informed Garner that he would not be allowed to transfer to the Ripley plant. Garner alleges that Hall told him that the transfer was being denied because of his earlier EEOC complaint and lawsuit against Gentry. Hall claims that he denied Garner's transfer based on Hall's prior experience dealing with Garner's insubordination. Hall told Garner to return to the Ecru plant, which he did later that day. Ashley claims that Garner was offered stationary frames work at the Ecru plant, but he refused the new assignment. The next day, August 18, Ashley terminated Garner's employment. Ashley claims that the reason for the termination was Garner's insubordination. Garner, on the other hand, claims that management in Ecru told him that he was being fired because Hall did not want him to work at the Ripley plant.

## B. Procedural Background

On August 23, 1999, Garner filed a complaint with the EEOC, alleging that he was terminated from Ashley in retaliation for his earlier complaint against Gentry. On December 9, 2002, the EEOC issued Garner a right to sue notice. The EEOC determined that there was reasonable cause to believe that Ashley retaliated against Garner, and thus violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a) (2000). The EEOC, however, decided not to bring suit itself. Instead, on February 6, 2003, Garner brought suit against Ashley. As amended

- 3 -

by the pretrial order, Garner's complaint alleged that Ashley violated Title VII by: (1) denying his transfer to the Ripley plant in retaliation for his earlier EEOC complaint against Gentry; and (2) terminating his employment in retaliation for his earlier EEOC complaint against Gentry.

At the close of Garner's presentation of evidence, Ashley moved for judgment as a matter of law as to the first allegation on the grounds that the denied transfer was only a lateral transfer, and thus did not constitute an adverse employment action. The district court agreed, and granted Ashley's motion. The second allegation went to the jury. On August 10, 2004, the jury returned a verdict in Ashley's favor, determining that Garner was not terminated in retaliation for his prior protected activity. Garner now appeals the district court's judgment as a matter of law as to his denied transfer.

## II. STANDARD OF REVIEW

We review de novo a district court's ruling on a motion for judgment as a matter of law. Miss. Chem. Corp. v. Dresser-Rand Co., 287 F.3d 359, 365 (5th Cir. 2002). Under the Federal Rules of Civil Procedure, a district court may grant a motion for judgment as a matter of law on an issue if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-movant] on that issue . . . ." FED. R. CIV. P. 50(a). In conducting this de novo review, we must view the record taken

as a whole and draw all reasonable inferences in favor of the nonmoving party. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000). Further, we may not make credibility determinations or weigh the evidence. <u>Id.</u>

### III. ANALYSIS

To prove a prima facie case of retaliation under Title VII, the plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. <u>Shackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 407-08 (5th Cir. 1999). An adverse employment action is "[a] tangible employment action [that] constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998). It is clear that a lateral transfer is not an ultimate employment decision for the purposes of Title VII. <u>Burger v. Cent. Apartment Mgmt., Inc.</u>, 168 F.3d 875, 879 (5th Cir. 1999) (per curiam).

On appeal, Garner acknowledges our holding in <u>Burger</u> but argues that <u>Burger</u> and the rest of this court's adverse employment action precedent must be reinterpreted in light of <u>Ellerth</u>. In <u>Ellerth</u>, the plaintiff was subject to sexual

harassment by her supervisor and was led to believe that she would be retaliated against if she did not accede to his requests. She did not comply with his requests but she did not suffer any adverse employment action as a result. The Supreme Court held that this lack of adverse consequences was not fatal to Ellerth's claim.

Garner claims that Ellerth should be read to say that where Title VII is violated, it is unnecessary to show that an adverse employment action occurred. According to Garner, a plaintiff now only needs to show that the conditions of his employment have been altered or that he has suffered some kind of tangible loss. Garner asserts that he has met this standard in two ways. First, as a result of the denied transfer, he faced a longer commute to work since the Ripley plant is closer to his home than the Ecru plant. Second, the denied transfer meant that if he remained in Ecru, he would have to return to doing stationary work. Garner believes that because he would enjoy greater incentive pay on the motion line, the denied transfer effectively reduced his income.[1] Finally, even if Ellerth did not so alter Title VII jurisprudence, Garner argues that he still suffered an adverse employment action because the denied transfer was a proximate

---

[1] In his reply brief, Garner argues that this claimed loss in incentive pay means that the denied transfer was an adverse employment action under current Fifth Circuit precedent. This argument is foreclosed, as arguments made for the first time in a reply brief are waived. City of Abilene v. United States Envtl. Prot. Agency, 325 F.3d 657, 661 n.1 (5th Cir. 2003).

cause for his being fired.  Garner argues that even if we were to accept Ashley's account of events, he was terminated because he refused to accept the work assignment he was given upon his return to Ecru.  Thus, according to Garner, the denied transfer played a key role in his being terminated.

Since Ellerth was decided, this court has repeatedly and consistently held that an adverse employment action is a necessary part of a plaintiff's prima facie retaliation claim. See, e.g., Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003); Evans v. Houston, 246 F.3d 344, 352 (5th Cir. 2001); Shackelford, 190 F.3d at 407-08.  Garner has given us no reason to question the validity of this view.  Garner cites three post-Ellerth cases, Felton v. Polles, 315 F.3d 470 (5th Cir. 2002), Fierros v. Tex. Dep't of Health, 274 F.3d 187 (5th Cir. 2001),  Watts v. Kroger Co., 170 F.3d 505 (5th Cir. 1999), in support of his argument that he need only show some tangible loss, as opposed to an adverse employment action.  These cases, however, do nothing to show that Ellerth abolished the adverse employment action requirement.  In all three cases, the discussion of Ellerth's impact is limited to the issue of how it might broaden the kinds of actions that fall under the adverse employment action requirement.  See Fierros, 274 F.3d at 192 n.2 ("This court has recognized that the definition of 'tangible employment action' developed in the sexual harassment context in [Ellerth] may be the proper 'adverse employment action' standard

for Title VII retaliation claims, but has not yet decided the issue."); <u>Felton</u>, 315 F.3d at 486-87; <u>Watts</u>, 170 F.3d at 512, n.6 ("We need not reach [the issue of how <u>Ellerth</u> impacts the definition of an adverse employment action] because even if [<u>Ellerth</u>] lowers the bar as to what qualifies as an adverse employment action, Watts cannot satisfy the definition of a tangible employment action as defined by [<u>Ellerth</u>]."). Furthermore, there is nothing in <u>Ellerth</u> to support the notion that there is no need for an adverse employment action in retaliation cases.

We also reject Garner's backstop argument that the denied transfer was an adverse employment action because it set in motion a chain of events that led to his termination. We have previously stated that Title VII was not designed "to address every decision made by employers that . . . have some tangential effect upon . . . ultimate decisions." <u>Dollis v. Rubin</u>, 77 F.3d 777, 781-82 (5th Cir. 1995) (per curiam). In Garner's argument, the denied transfer had, at best, a tangential impact on his being fired. Thus, it was not an ultimate employment action.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.