**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

July 19, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———

No. 06-20663
Summary Calendar

———

FRED D BROUSSARD

Plaintiff - Appellant

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE; DON KEIL, Individually
and his capacity as Director of Religious Programs; DON KASPAR,
Individually and in his capacity as Director of Chaplaincy; BILLY PIERCE,
Individually and in his capacity as Director of Chaplaincy; MARK PICKETT,
Individually and in his capacity as Chaplaincy Regional Coordinator of
Region III; THOMAS MEDART, Warden, Individually and in his capacity as
Warden of Central Unit TDCJ; TERRY FOSTER, Individually and in his
capacity as Warden of Central Unit, TDCJ; BRENT LARSEN, Individually;
JOHN STARLIPER, Individually and in his official capacity as lieutenant in
the TDCJ Security System

Defendants - Appellees

———

Appeal from the United States District Court
for the Southern District of Texas, Houston
USDC No. 4:04-CV-1059

———

Before KING, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Plaintiff-appellant Fred D. Broussard appeals the district court's summary judgment against him in an employment discrimination case. For the reasons stated, we AFFIRM.

## I. Factual and Procedural Background

Beginning in 1997, plaintiff-appellant Fred D. Broussard, an African-American, worked for the Texas Department of Criminal Justice ("TDCJ") at the Central Unit for six years. Prior to that, Broussard served for fourteen years as a volunteer chaplain in that same unit.

In 2001, Brent Larsen, a Caucasian, began working as a chaplain at the Central Unit. Broussard and Larsen had a strained relationship and repeatedly reported each other's behavior to their supervisors. The unit warden and chaplaincy officials instructed both chaplains to learn to work with each other.

In 2003, the state legislature mandated that the TDCJ reduce its force. As a result, sixty chaplains lost their jobs, and approximately twenty, including Broussard, were reassigned. With two exceptions, the terminations and reassignments were implemented according to seniority. Chaplains on active military status retained their assignments, and three chaplains were administratively assigned death row ministry. All of the chaplains that fell into these two categories had more time with the state than Broussard. Further, the chaplains assigned to death row had more experience in that ministry. Larsen, who also had more time with the state than Broussard, remained at the Central Unit. Ultimately Broussard was transferred to his seventh choice location, the Michael Unit. His pay, duties, and benefits remained the same, but Broussard's new duty station was over 200 miles from his home.

After the transfers were announced, Broussard filed an EEOC charge alleging race discrimination. About a month later, as Broussard was transferring to his new unit, the warden of Central Unit prepared a disciplinary

case against Broussard related to security violations at the Central Unit. The disciplinary case transferred with Broussard to his new unit, and that warden dismissed it.

Broussard resigned after the disciplinary case was dismissed. He then filed another charge with the EEOC alleging retaliation based on the dismissed disciplinary case.

Broussard brought an employment discrimination suit against the following defendants: TDCJ; Don Keil, individually and in his capacity as Director of Religious Programs; Don Kaspar, individually and in his capacity as Director of Chaplaincy; Billy Pierce, individually and in his capacity as Director of Chaplaincy; Mark Pickett, individually and in his capacity as Chaplaincy Regional Coordinator of Region III; Thomas Medart, Warden, individually and in his capacity as Warden of Central Unit TDCJ; Terry Foster, individually and in his capacity as Warden of Central Unit, TDCJ; Brent Larsen; John Starliper, individually and in his official capacity as lieutenant in the TDCJ Security System (collectively, "defendants").

The district court granted defendants' motion for summary judgment, dismissing all of Broussard's claims against TDCJ and the eight individuals. Broussard now appeals.

## II. Discussion

We review a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000). "Summary judgment is proper when the evidence reflects no genuine issues of material fact and the non-movant is entitled to judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(c)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return

a verdict for the non-moving party.'"  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## 1. Title VII Discrimination Claim

Title VII prohibits employers from discriminating against employees on the basis of race.  42 U.S.C. § 2000e-2(a).  Title VII claims are subject to the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. Id. at 802-04.  Then, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Id.  Once the defendant puts forth a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to produce evidence that the defendant's articulated reason is merely a pretext for discrimination, id., or that if true, it is only one reason for the defendant's conduct and that race was a motivating factor in the adverse employment action.  Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

To establish a prima facie case of discrimination, Broussard must establish that he "(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside his protected class," or, in the case of disparate treatment, that others similarly situated were treated more favorably.  Okoye v. Univ. of Tex. Houston Health Sci. Cent., 245 F.3d 507, 512-13 (5th Cir. 2001).

The district court held that Broussard failed to establish a prima facie case because he did not present evidence that he suffered an adverse employment action.  Broussard argued that his transfer pursuant to a reduction in force constituted an adverse employment action.  However, even assuming that Broussard established a prima facie case, the district court did not err in

granting summary judgment. The TDCJ put forth a legitimate nondiscriminatory reason for the transfer–that it was implemented according to seniority and that others who were not reassigned had more time with the state that Broussard. Broussard has not put forth any evidence that TDCJ's reason was pretext or that if it was true, race was a motivating factor. Accordingly, the district court did not err in granting the defendants summary judgment on Broussard's discrimination claim.

2. Retaliation Claim

Title VII also forbids an employer from discriminating against an employee "because [the employee] has opposed any practice made an unlawful employment practice [under Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of unlawful retaliation, Broussard must show (1) that he "engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." Grimes v. Tex. Dep't of Mental Health and Mental Retardation, 102 F.3d 137, 140 (5th Cir. 1996). Under Title VII, an employee engages in protected activity when he has "opposed any practice made an unlawful employment practice" under Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). An adverse employment action is any action that would be materially adverse to a reasonable employee, in other words, so harmful so as to dissuade the employee from making a complaint of discrimination. Burlington N. & Santa Fe v. White, 126 S.Ct. 2405, 2409 (2006).

Broussard has failed to establish a prima facie case of retaliation. "[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity."

5

Manning v. Chevron Chem. Co., L.L.C., 332 F.3d 874, 883 (5th Cir. 2003). Broussard did not demonstrate that the warden who filed the disciplinary case knew of the Broussard's EEOC charge[1], which was related to the chaplaincy department. As a result, Broussard failed to demonstrate a causal link between his protected activity–the EEOC charge–and the disciplinary charge.

However, even if we assume that Broussard demonstrated a prima facie case, the district court did not err in granting summary judgment. TDCJ asserted a nondiscriminatory reason for the disciplinary charge–that Broussard violated security procedures. TDCJ also presented evidence that the warden who instigated the disciplinary charge did not know of the EEOC charge. Broussard failed to put forth evidence that this explanation was pretext. Accordingly, the district court did not err in granting summary judgment on Broussard's retaliation claim.

## 3. Hostile Work Environment

To succeed on his hostile work environment claim, Broussard must demonstrate that his work environment "permeated with discriminatory intimidation, ridicule, and insult." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). A prima facie case of racial harassment alleging hostile work environment normally consists of five elements: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment

---

[1] Broussard did not engage in protected activity until he filed the EEOC charge as it was the first time he complained of racial discrimination. His general complaints about Larsen's poor work ethic, overzealous security personnel, and the response of his superiors did not constitute protected activity. See Watts v. Kroger, 170 F.3d 505, 511-12 (5th Cir. 1999) (recognizing that an employee's complaint to the manager regarding her supervisor's comments did not satisfy the protected activity as required for her Title VII retaliation claim because the employee did not report any sexual harassment in that complaint).

complained of affected a term[,] condition[,] or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001). In determining whether the environment is hostile, the court considers all the circumstances such as the frequency of the conduct and whether it was physically threatening or humiliating. Harris, 510 U.S. at 23.

Broussard claims that the TDCJ subjected him to a hostile work environment by repeatedly failing to discipline Larsen or respond adequately to the three internal grievances that Broussard filed in late 2002 and early 2003. Broussard tries to frame a disparate treatment claim as a hostile environment claim. Broussard does not allege that he was subjected to any racial epithets, insults, ridicule, or jokes, or that any of the harassment was racial in nature. Broussard's complaints, when taken as a whole, are not severe and pervasive enough to create an abusive working environment. Because Broussard has failed to establish a prima facie case of hostile work environment, the district court properly granted summary judgment.

4. Section 1983 Claims Against the Individual Defendants

The individual defendants in this case have asserted the defense of qualified immunity to Broussard's § 1983 claim. Qualified immunity will shield government officials from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kinney v. Weaver, 367 F.3d 337, 349 (5th Cir. 2004). In determining the applicability of qualified immunity, we must first determine "whether the plaintiff has asserted a violation of a constitutional right" under currently applicable constitutional standards. Id. at 350 (quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991). We then consider whether the

official's conduct was objectively reasonable in light of law that was clearly established at the time that the conduct occurred. Id.

In his complaint, Broussard argues that the individual defendants have violated the due process and equal protection clauses of the Fourteenth Amendment. Broussard fails to explain how the defendants violated his right to due process of the law or to equal protection of the laws. An employment contract may give rise to a property interest in continued employment, the deprivation of which could give rise to a due process claim. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 576-77 (1972); see also Mallek v. City of San Benito, 121 F.3d 993, 998 (5th Cir. 1997). But Broussard has not asserted that any employment contract existed. Because Broussard has not directed the court to a violation of a constitutional right, he cannot defeat defendants' assertion of qualified immunity to his § 1983 claim. See Salas, 980 F.2d at 305. Accordingly, the district court properly granted defendants' motion for summary judgment on the § 1983 claim.

## III. Conclusion

For the foregoing reasons, the district court's judgment is AFFIRMED.