## Martin LACHER, Plaintiff,

v.

## Togo WEST, Secretary of Veterans Affairs, Defendant.

### No. Civ.A. 399CV2937L.

United States District Court,
N.D. Texas,
Dallas Division.

June 8, 2001.

Durwood D. Crawford, Goins, Underkofler, Crawford & Langdon, L.L.P., Dallas, TX, for Plaintiff.

Richard H. Stephens, U.S. Attorney, Winnie Jordan Reaves, Ass't U.S. Attorney, Myrna B. Silen, Ass't U.S. Attorney, Dallas TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court are Defendant's Motion for Summary Judgment, filed January 12, 2001, and Plaintiff's Unopposed Motion to Permit Filing of Plaintiff's Sur–Reply Brief and Supporting Affidavit, filed March 9, 2001. After careful consideration, the court **denies** Plaintiff's motion and **grants in part** and **denies in part** Defendant's motion.

Plaintiff Martin Lacher ("Lacher") seeks leave of court to file a surreply brief. Once a motion is filed, the Local Civil Rules permit a response by the nonmovant and a reply by the movant. *See* Local Civil Rule 7.1. Thus, the movant is entitled to file the last pleading. Surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter. The court has found that surreplies usually are not that helpful in resolving pending matters, and only permits pleadings beyond Local Civil Rule 7.1 in exceptional or extraordinary circumstances. Lacher initially filed his surreply brief on March 2, 2001, which was ordered unfiled by the court because he neither sought leave of court to file a surreply nor demonstrated exceptional circumstances. He now requests leave of court, but still has not demonstrated ex-

ceptional circumstances.[1] He relies upon the fact that Defendant Togo West ("West") included an appendix with his reply brief for the motion for summary judgment. That is not necessarily a violation of the local rules, as Lacher contends, and in any event the court does not consider arguments (as opposed to evidence) raised for the first time in a reply brief. Accordingly, there is no prejudice to Lacher and no need for a surreply brief.[2] The court therefore **denies** Plaintiff's Unopposed Motion to Permit Filing of Plaintiff's Sur–Reply Brief.

### I. *Factual and Procedural Background* [3]

Lacher was employed at the Dallas Veterans Administration Hospital as Assistant Canteen Chief, beginning in 1994. He was born in 1935, and thus was more than 40 years old at all times relevant to this action. He was eligible for early retirement as of May 1997, and actually retired on July 11, 1997. His supervisor at the hospital, effective February 1995, was Tom Beaudine ("Beaudine"). This controversy arises solely from interactions between Lacher and Beaudine. Lacher alleges a variety of harassing conduct by Beaudine, which Lacher believes was related to his age. The conduct alleged includes actions that are facially age-neutral (such as denial of a bonus, a disciplinary letter for violation of hospital rules, and criticism of Lacher's work habits and decisions) and others that explicitly included references to Lacher's age (such as comments to the effect that "you're too old, you've lost it, why don't you retire"). Beaudine made such comments and criticisms both to Lacher's subordinates and directly to Lacher.

Lacher had originally intended to retire in 1997, which was widely known at the hospital. He decided, early that year, to continue to work until age 65 but did not discuss his change in plans with others at work. As a result of the "continuous harassment and pressure generated by Beaudine," he ultimately decided to go forward with his original intention of early retirement at age 62. Lacher filed retirement papers in May 1997 and retired effective July 11, 1997. He then contacted an EEO counsel on July 17, 1997 and filed a written complaint of age discrimination

1. Plaintiff also has not followed proper procedure for a motion for leave to file. The court applies the same requirements to a motion for leave to file as a motion for leave to amend. That is, "[a] party who moves for leave to file [a surreply] must attach a copy of the proposed [filing] as an exhibit to the motion. The party must also submit with the motion an original and a second copy of the proposed [filing]. The original and second copy must neither be physically attached to the motion nor made exhibits to the motion. The original of the proposed [filing] must contain the original signature of the signing attorney." Local Rule 15.1. This requirement then allows the proposed brief to be filed immediately upon the court's granting the motion, and ensures that the brief filed is the same as considered by the court in ruling on the motion for leave to file. Plaintiff had filed his surreply brief earlier, but that brief was unfiled and returned to Plaintiff, and would have to be resubmitted.

2. Plaintiff asserts that both parties "desire to have all submitted materials filed and considered by the Court." Motion at 3 (Certificate of Conference). That is not dispositive. The restrictions against surreplies and against new arguments raised for the first time in a reply brief are imposed by the court and may not be waived by the parties. The court will not permit the parties to continue arguing the merits beyond the scope provided for in the local rules, absent exceptional circumstances, no matter how much they wish to do so.

3. The facts contained herein are either undisputed or, where they are disputed, presented in the light most favorable to Plaintiff as the nonmovant.

on September 8, 1997. The EEO complaint was terminated, at Lacher's request to allow him to proceed in district court, on December 7, 1999 and Lacher filed this suit on December 28, 1999, alleging discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The complaint asserts three different bases for his age discrimination claim: 1) specific adverse employment actions in the form of denial of a bonus and a disciplinary letter; 2) harassment constituting a hostile work environment; and 3) specific adverse employment action in the form of constructive discharge.

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id., see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## III. *Analysis*

### A. *Denial of Bonus and Disciplinary Letter*

Under the applicable burden-shifting paradigm for ADEA claims, Lach-

er must establish a prima facie case of discrimination; West must then articulate a legitimate, nondiscriminatory reason for its action; and finally, if the parties satisfy their initial burdens, the case reaches the "pretext stage" and Lacher must then adduce sufficient evidence to permit a reasonable trier of fact to find pretext or intentional discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (Title VII· race discrimination claim); *Reeves v. Sanderson Plumbing Products, Inc.,* 197 F.3d 688, 691–92 (5th Cir.1999) (applying *McDonnell Douglas* framework to ADEA claims), *rev'd on other grounds,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The typical prima facie case for an age discrimination claim involves a termination or demotion, *see infra* Section III.C, and therefore focuses on the identity of the person selected to replace the plaintiff. *See, e.g., Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 957 (5th Cir.1993). When the adverse employment action does not involve a change in position, however, as with the denial of a bonus and disciplinary letter, a prima facie case requires instead that a plaintiff show "(1) she was a member of the protected class of persons forty or older; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) substantially younger, similarly-situated employees were treated more favorably." *Wade v. Lerner New York, Inc.,* 243 F.3d 319, 322 (7th Cir.2001); *see also Bennett v. Total Minatome Corp.,* 138 F.3d 1053, 1062 (5th Cir.1998) (denial of a bonus). Although the motion for summary judg-

ment is not entirely clear in this respect, the court concludes that West challenges the last aspect of the prima face case with respect to the alleged adverse employment actions in the form of a disciplinary letter and the denial of a bonus.[4] Lacher fails to address this in his response, and the court finds no indication in the summary judgment record that Lacher was treated differently than younger, similarly situated employees in this respect. While the actions may have been adverse, Lacher has provided no summary judgment evidence tending to show a causal connection between the adverse action and his age required for the prima facie case. The court further notes that Lacher stated in his deposition that he was relinquishing any claim based on the denial of the bonus (and perhaps the written reprimand). Defendant's Appendix, Exhibit G at 13. The court therefore dismisses Lacher's claim to the extent based on the denial of a bonus or the disciplinary letter.

## B. *Hostile Environment*

■ "Hostile environment" as a category of employment discrimination was initially applied in the context of sexual harassment claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* The Fifth Circuit recognizes hostile environment claims for other Title VII categories, such as race, as well. *See, e.g., Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1048–49 & n. 9 (5th Cir.1996). The Fifth Circuit has not explicitly addressed whether a hostile environment claim is available under the

4. West cites *Russell v. McKinney Hospital Venture,* 235 F.3d 219, 223–24 (5th Cir.2000), for the requirements of a prima face *discharge* case, and focuses *most* of the discussion on the age of Lacher's replacement rather than whether other individuals received a bonus or disciplinary letter. The age of Lacher's replacement is, of course, not the relevant con-

sideration when considering bonuses and reprimands as a distinct and separate basis for an age discrimination claim. The court concludes, however, that West does adequately challenge the prima facie case, and neither the complaint nor Lacher's response discusses how other employees were treated with respect to bonuses or disciplinary letters.

ADEA, but the Second and Sixth Circuits have concluded that it is. *See, e.g., Brennan v. Metropolitan Opera Ass'n,* 192 F.3d 310, 318 (2d Cir.1999); *Crawford v. Medina Gen. Hosp.,* 96 F.3d 830, 834 (6th Cir. 1996).[5] The rationale for the hostile environment doctrine is that harassment, if sufficiently abusive, can adversely affect "terms, conditions, or privileges of employment." *See Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971) (opinion by Judge Goldberg, with Judge Godbold concurring in the result), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). The rationale is equally applicable to older workers. The court further notes that the statutory language upon which courts have relied for hostile environment claims appears in both Title VII and the ADEA, *compare* 42 U.S.C. § 2000e–2(a)(1) *with* 29 U.S.C. § 623(a)(1), as the latter was patterned on the former, *see Greenlees v. Eidenmuller Enterprises, Inc.,* 32 F.3d 197, 199 (5th Cir.1994). Accordingly, the court assumes that, if faced directly with the issue, the Fifth Circuit would follow the reasoning of *Brennan* and *Crawford.* The court therefore concludes as a matter of law that hostile environment claims are available under the ADEA as well as under Title VII.

Absent guidance from the Fifth Circuit to the contrary, the court concludes that the requirements for a hostile environment claim under the ADEA parallel those for a hostile environment claim under Title VII. The previous test for a viable hostile environment claim was as follows:

(1) The employee belongs to a protected group;

(2) The employee was subject to unwelcome ... harassment;

(3) The harassment complained of was based upon [membership in the protected group];

(4) The harassment complained of affected a "term, condition or privilege of employment," i.e., the ... harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment; and

(5) Respondent superior, i.e., that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Watts v. Kroger Co.,* 170 F.3d 505, 509 (5th Cir.1999).

With the release of *Burlington [Ind. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)] and *Faragher [v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)], however, this test is modified so that employees bringing a [hostile environment] case alleging that a supervisor with immediate (or successively higher) authority over the employee harassed the employee need only satisfy the first four elements of the test outlined above.

*Id.* For a hostile environment claim for which the plaintiff cannot show a tangible employment action, the employer can assert an affirmative defense by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any

---

**5.** *See also Joachim v. Babbit,* 60 F.Supp.2d 581, 585 (M.D.La.1999) (noting that "hostile working environment claims are generally cognizable under the ADEA"). Other circuits have declined to decide the issue. *See, e.g., Halloway v. Milwaukee County,* 180 F.3d 820, 827 (7th Cir.1999); *Burns v. AAF–McQuay, Inc.,* 166 F.3d 292, 294 (4th Cir.1999); *Unit-*

ed States EEOC v. Massey Yardley Chrysler Plymouth, Inc.,* 117 F.3d 1244, 1249 n. 7 (11th Cir.1997). *See generally* Margaret M. Gembala, Note, ADEA and the Hostile Work Environment Claim: Are the Circuit Courts Dragging Their Feet at the Expense of the Harassed Older Worker?, 7 Elder L.J. 341 (1999).

[illegal] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275 (in context of sexual harassment claim).

Courts determine whether an environment is sufficiently abusive to be actionable by reviewing all of the relevant circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. *See Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir.1998) (citing *Faragher*, 524 U.S. at 787–88, 118 S.Ct. 2275); *Nash v. Electrospace System, Inc.*, 9 F.3d 401, 404 (5th Cir.1993). Incidental or occasional age-based comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are not discriminatory changes in the terms and conditions of a worker's employment. *See Butler*, 161 F.3d at 269 n. 3 (citing *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275).

Even when a hostile environment is shown, the plaintiff must establish that the workplace environment had the effect of altering the terms and conditions of his employment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Nash*, 9 F.3d at 403. Central to the court's inquiry into a hostile environment claim is whether the alleged harasser's actions have undermined the victim's workplace competence, discouraged him from remaining on the job, or kept him from advancing in his career.

*Harris*, 510 U.S. at 22, 114 S.Ct. 367; *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 874 (5th Cir.), *cert. denied*, 528 U.S. 963, 120 S.Ct. 395, 145 L.Ed.2d 308 (1999); *Butler*, 161 F.3d at 270. The availability of a hostile environment claim is intended only to prohibit and prevent conduct "that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace." *Shepherd*, 168 F.3d at 874; *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir.1996), *cert. denied*, 519 U.S. 1055, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997). The law's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance. *Weller*, 84 F.3d at 194.

■ It is far from clear whether the harassment that Lacher describes was sufficiently severe and pervasive to support a hostile environment claim, or whether West could successfully assert the *Faragher* affirmative defense. West, however, did not challenge Lacher's claim with regard to those issues, which therefore have not been adequately briefed and are not before the court. West's only argument impliedly directed at a hostile environment claim is that the harassing conduct was not based on age. The court finds this unpersuasive. Lacher provides competent summary judgment evidence of several harassing remarks that were clearly age-based, such as "you're too old, you've lost it, why don't you retire" and that he could be replaced with a younger person who was less expensive.[6] Given that background,

6. It is unclear whether discharging Lacher simply because he was more "expensive" would constitute a violation of the ADEA, given the common perception/stereotype that salary correlates roughly with age. *Compare Geller v. Markham*, 635 F.2d 1027, 1034(2d Cir.1980) (explaining terminations of older workers as due to budgetary concerns is not a defense against an ADEA claim), *cert. denied*, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981) *with Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d

other remarks concerning Lacher's competence may also have been motivated by his age. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) ("It is the very essence of age discrimination ... [that] the employer believes that productivity and competence decline with old age."). After reviewing the summary judgment evidence, the court concludes that Lacher has established a genuine issue of material fact as to whether the alleged harassing conduct was based on age. West is therefore not entitled to summary judgment on Lacher's age discrimination claim to the extent based on a hostile environment theory.

### C. *Constructive Discharge*

■ A plaintiff can satisfy the prima facie case in an age discrimination case by showing that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir.1993).[7] "When an employee resigns, he may satisfy the discharge requirement by proving constructive discharge. To prove constructive discharge an employee must offer evidence that the employer made the em-

ployee's working conditions so intolerable that a reasonable employee would feel *compelled* to resign." *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir.2000) (emphasis added). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001), *petition for cert. filed* (May 21, 2001).[8]

■ West challenges Lacher's assertion of constructive discharge for failure to exhaust administrative remedies. A condition precedent to bringing suit on an employment discrimination VII claim is the timely filing of an EEOC charge. *Young v. City of Houston, Tex.*, 906 F.2d 177, 179 (5th Cir.1990). The scope of a lawsuit filed thereafter extends no further than the scope of the investigation that can reasonably be expected to grow out of the charge of discrimination. *Id.; Fine v. GAF Chemical Corp.*, 995 F.2d 576, 577–78 (5th Cir.1993); *Chester v. American Tel. & Tel. Co.*, 907 F.Supp. 982, 987 (N.D.Tex.1994), *aff'd*, 68 F.3d 470 (5th Cir.1995), *cert. denied*, 516 U.S. 1141, 116 S.Ct. 974, 133 L.Ed.2d 894 (1996). It is not limited to the exact language of the EEOC charge, but neither does it extend beyond the investigation that would reasonably arise from that language. The determination

338 (1993) (termination of employee to prevent pension benefits from vesting, if not also motivated by age, does not violate ADEA). In this instance, however, Lacher's supervisor is alleged to have mentioned that a replacement would be *younger* as well as less expensive.

7. West argues that Lacher's replacement was only five years younger, which is not "significantly younger." That may be true, but the fourth requirement of the prima facie case can also be met by a showing that the employee was "otherwise discharged because of his age." Replacement by a significantly younger employee is sufficient, but not necessary,

for a prima facie case. West has cited no authority to the contrary.

8. As with the hostile environment claim, it is far from clear whether the work environment was sufficiently severe and pervasive to alter the "terms, conditions, or privileges of employment." For a constructive discharge claim, the standard is even higher; the conditions must be so intolerable that a reasonable employee would feel *compelled* to resign. Because West failed to challenge this requirement for Lacher's constructive discharge claim, however, it was not adequately briefed and is not before the court.

involves competing policies – limiting the scope of the lawsuit to promote "an emphasis upon voluntary settlement of all issues without an action in the District Court," and expanding the scope of the lawsuit to recognize "the remedial and humanitarian underpinnings of [ADEA]," *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 461, 467 (5th Cir.1970) (internal quotation marks and citation omitted).

Lacher's EEO complaint, dated September 8, 1997, did not specify constructive discharge or that he had retired. Defendant's Appendix, Exhibits D & J. The EEO investigator issued written interrogatories to Lacher. Lacher's affidavit response, dated January 2, 1998, did not reference his retirement/termination, but did state that the harassment "made working conditions intolerable." *Id.,* Exhibit I. The EEO investigator reported that Lacher "feels that his supervisor constantly harassed him about his work and his health in an *attempt* to force him to retire." Plaintiff's Appendix at 64 (emphasis added). The investigative report did not address constructive discharge in any other way. *Id.* at 62–67. When Lacher sought to amend the complaint in November 1999 to add allegations of constructive discharge, the Administrative Law Judge denied his motion and explicitly ruled that "a cause of action for constructive discharge was not sufficiently raised in the Complainant's EEO complaint." Defendant's Appendix, Exhibit F.

The record is unclear *why* the investigation did not encompass constructive discharge. It is conceivable that the investigator asked whether the "intolerable" working conditions had led to Lacher's retirement and was told that they did not. On the other hand, the investigator may have been unaware that Lacher had retired, or assumed that the early retirement was motivated by other reasons.[9] Lacher's failure to explicitly mention his retirement, only two months earlier, in the EEO complaint easily could have influenced such a conclusion by the investigator. It *is* clear that the investigation excluded any consideration of constructive discharge, but that is not dispositive as to the scope of this action. "Weight and credibility should be given to the construction or meaning the EEOC gives to charges filed with them," *Tillman v. City of Boaz,* 548 F.2d 592, 594 (5th Cir.1977) (allowing an *expansive* reading of an EEOC charge because of the scope of the investigation), but an employment discrimination lawsuit *can* extend beyond the scope of the actual investigation. *Gamble v. Birmingham Southern R.R. Co.,* 514 F.2d 678, 688–89 (5th Cir.1975).

Arguably the decision by the Administrative Law Judge was correct as to the reasonable scope of the investigation, but West faces a high threshold of proof as the movant for summary judgment. The court concludes that West did not satisfy his burden of showing the absence of a genuine issue of material fact whether constructive discharge was beyond "the scope of the investigation that can reasonably be expected to grow out of the charge of discrimination," *Young,* 906 F.2d at 179. The record is insufficient for the court to determine exactly what would have been reasonable here, and additional evidence is needed which will involve determinations of credibility not suitable for the summary judgment stage. Accordingly, the court concludes, pending additional evidence presented at trial, that the alleged constructive discharge is within the scope of

***

**9.** The reference in the investigator's report to Lacher's belief that Beaudine was *attempting* to force him to retire focuses on Beaudine's (alleged) motives, and not necessarily on the actual effect on Lacher.

this lawsuit. West is therefore not entitled to summary judgment on Lacher's age discrimination claim to the extent based on constructive discharge.

### III. *Conclusion*

Lacher has not established a genuine issue of material fact as to age discrimination related to the disciplinary letter and denial of a bonus. The court therefore **grants in part** Defendant's. motion and dismisses Lacher's ADEA claim to the extent based on those allegations. Lacher has, however, established a genuine issue of material fact as to the only aspect of his hostile environment and constructive discharge theories challenged by West. The court therefore **denies in part** Defendant's motion and will allow Lacher's ADEA claim to go forward based on those theories.