11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

City of Houston and Susan McMillian, in her individual capacity

Appellants

Vs.                   No.
11-03-00200-CV -- Appeal from Harris County

Juanita
Fletcher 

Appellee

 

Juanita Fletcher brought this action against her
former employer, the City of Houston, and her former supervisor, Susan
McMillian.  Fletcher asserted age
discrimination claims against the City under the Texas Commission on Human
Rights Act (TCHRA). TEX. LAB. CODE ANN. '
21.001 et seq. (Vernon 1996 & Supp. 2004 - 2005).  She alleged an intentional infliction of
emotional distress claim against McMillian.  The jury found (1) that the City had subjected
Fletcher to a hostile work environment based upon her age, (2) that the City
had discriminated against Fletcher based upon her age, and (3) that the City
had terminated Fletcher based upon her age.  With respect to Fletcher=s claims against the City, the jury
awarded $90,000.00 in past lost wages, $69,000.00 in diminishment in future
wages, and $100,000.00 in past mental anguish damages.  The jury also awarded attorney=s fees.  The jury also found in Fletcher=s favor on her intentional infliction of
emotional distress claim against McMillian.  On the intentional infliction of
emotional distress claim, the jury awarded $100,000.00 in compensatory damages
and $64,000.00 in exemplary damages. 
The trial court entered judgment in accordance with the jury=s verdict.  The City and McMillian appeal the
judgment.  For the reasons stated,
we modify the trial court=s
judgment against the City and affirm the judgment as modified, and we reverse
the trial court=s
judgment against McMillian and render judgment that Fletcher take nothing on
her claims against McMillian.

                                                                  Issues
Presented








The City presents five issues for review.  The City argues (1) that the trial court
erred by submitting an improper instruction to the jury on Fletcher=s hostile work environment claim, (2)
that the evidence was legally and factually insufficient to support the jury=s finding that the City subjected
Fletcher to a hostile work environment based on age, (3) that the evidence was
legally and factually insufficient to support the jury=s
finding that the City subjected Fletcher to discriminatory treatment based on
age, (4) that the evidence was legally and factually insufficient to support
the jury=s finding
that Fletcher=s age was
a motivating factor in the City=s
decision to discharge her, and (5) that the trial court erred in awarding an
improper amount of prejudgment interest and postjudgment interest in the
judgment.

McMillian presents six issues for review.  McMillian argues (1) that the trial
court erred in determining that she engaged in conduct that would support a
claim for intentional infliction of emotional distress, (2) that the evidence
was legally and factually insufficient to support a finding that she committed
extreme and outrageous conduct, (3) that the evidence was legally and factually
insufficient to support a finding that Fletcher suffered severe emotional
distress, (4) that Fletcher may not pursue a claim for intentional infliction
of emotional distress B
which is a Agap-filler@ remedy B
because she has an adequate remedy for age discrimination,  (5) that the trial court erred in
awarding Fletcher a double recovery by awarding Fletcher damages on her age
discrimination claim and her intentional infliction of emotional distress
claim, and (6) that the trial court erred in awarding exemplary damages against
her. 

                                                                    The
Evidence

Fletcher was employed by the City from September
3, 1996, until May 30, 1997.  She
was an Administrative Assistant III in the City=s
Department of Public Works & Engineering, Traffic Management &
Maintenance Division.  She was 53
years old when she began her employment with the City.  Fletcher=s
supervisor was McMillian.  McMillian
was 48 years old when Fletcher began her employment with the City.  The City terminated Fletcher for the
stated reasons of unsatisfactory service during her probationary period and
insubordination.

Testimony of Fletcher   








Fletcher said that, during her employment with the
City, McMillian called her Aincompetent,@ a Astupid
old woman,@ an Aold woman,@
and Asenile.@ 
She said that McMillian verbally abused her and screamed and yelled at
her.  McMillian called her a Astupid old woman@
several times.  Most of McMillian=s comments were behind closed doors,
but McMillian would come to her desk and Aream@ her out and yell at her.  McMillian told her that the younger
employees were much better than she was. 
McMillian treated younger employees better than she treated older
employees.  On occasion, other City
employees were present when McMillian yelled at her or called her Astupid@
or Astupid old woman.@ 
Fletcher=s Aday-to-day dealings@ with McMillian included McMillian=s Alitany@ that Ayou
were stupid, you were senile, you were old, you were incompetent.@ 
McMillian was demeaning and rude, treated Fletcher like she was nothing,
and treated Fletcher that way every day.

McMillian would not allow Fletcher to do a number
of the functions listed on the job description for her Administrative Assistant
III job.  Fletcher learned very
early on that the actual job was not going to be what she thought it would
be.  McMillian basically told her
that she was a clerk.  McMillian did
not give her access to information that would have permitted her to do the
job.  McMillian denied her training
that was necessary to do her job. 
McMillian would not allow her to attend city council meetings or
neighborhood traffic meetings. 
Without access to this type of information, she could not obtain
information necessary to do her job. 
McMillian told her that she was totally incompetent and that training
would not do any good.  Angelo John
Santopolo and Mary Nola Miles B
also employees over 40 years of age B
were not allowed to do the jobs that they were hired to perform.

McMillian gave Fletcher substandard ratings in her
seven-month Employee Performance Evaluation (EPE).  Fletcher told McMillian that she did not
have any training and that the EPE did not bear any relevance to the job that
she was hired to do.  McMillian said
that there was nothing Fletcher could do to improve her performance.  Fletcher was frustrated and worried
about the evaluation.  McMillian
permitted her to look for another position with the City.  McMillian=s
treatment of Fletcher did not change after the performance review.  Fletcher was frightened and upset and
did not know whether she was going to be able to keep her job. 








On May 14, 1997, McMillian approached Fletcher and
asked her if she would come to an EPE meeting.  By then, Fletcher had contacted the EEOC[1]
and an attorney because of the discrim-inatory environment at work.  Fletcher wanted to call her attorney
before going to the EPE. She told McMillian that she could attend the meeting
after making a phone call or two. 
McMillian asked her whether she was being insubordinate, and Fletcher
responded that she was not. 
McMillian let her make the call only after verbally abusing her and
screaming at her.  After making the
call, she told McMillian that she was ready to go to the EPE.  McMillian told her that it had been
cancelled. 

On that same day, McMillian told Fletcher that she
was not allowed to receive any phone calls at work.  Earlier, Fletcher had told McMillian
that she had a daughter who was ill at home and that her daughter might need to
contact her.  McMillian told
Fletcher that Miles could take Fletcher=s
calls and let Fletcher know about them. 
After Fletcher learned that she had not received two messages from her
daughter in a timely manner, she broke down and started crying.  Fletcher got permission from McMillian
to go home.  When she got home, she
learned that her daughter had passed out that morning and, after coming to, had
tried to call her at work.  Fletcher
testified that her daughter could have died that morning.

Fletcher went to work the next day.  Shortly after arriving at work, she was
placed on administrative leave. 
Fletcher submitted her resignation at the end of the month.  McMillian and two men came to her
house.  She would not let them in
because she was afraid of them.  The
City terminated Fletcher=s
employment before her resignation became effective.

Fletcher considered consulting a physician or a
psychologist because of the stressful situation at work.  She went to an appointment with her
daughter=s
therapist, but she could not afford formal counseling.  She talked to her pastor about the
emotional problems that she was having as a result of McMillian=s conduct.  Fletcher was depressed, could not eat or
sleep, had violent migraines, had asthma attacks, and was constantly coughing.

Testimony of Santopolo, Ukaegbu, Husain, Harris, Cox, and Van
Manen 








Santopolo was a former City employee who had
worked with Fletcher.  Fletcher was
being ordered to do a very different job than that of her job title.  Fletcher basically just sat at her desk
and did nothing more than make copies. 
Fletcher was not allowed to answer the telephone.  Santopolo heard McMillian yell at
Fletcher, call her a Astupid
old woman,@ and tell
her that she was Aincompetent.@ 
He recalled McMillian calling Fletcher a Astupid
old woman@ two or
three times. Every few days, Fletcher would come into his office crying.  Santopolo and others listened to her and
consoled her.

Samson Ukaegbu worked for the City from June 1996
until June 1998.  Ukaegbu testified
that Fletcher was the division secretary. 
Fletcher came into his office once or twice crying.  Fletcher told him that McMillian had
talked to her in an unprofessional manner.  He never heard McMillian use the
expression Astupid
old woman.@

Naeem Husain worked in the City=s traffic management department.  Husain testified that he heard McMillian
and Fletcher arguing on one occasion. 
Fletcher was very professional and capable of doing any kind of work.

Jack A. Harris was the operations director of
Professional Career Advantage. 
Harris testified that he counseled people; advised them on career moves;
and determined whether a job would be appropriate for them based upon their
experience, talents, and abilities. 
Fletcher came to his firm in 1996 for career assistance.  He considered her to be very bright and
sharp, and he thought that she had a lot of talent.  Fletcher wanted to know how to get back
into the work force.  Fletcher was
interested in an administrative assistant job with the City.  Harris examined Plaintiff=s Exhibit No. 4, which was the City=s posting for Fletcher=s Administrative Assistant III
job.  He considered the job to be a
professional type of position.  He
said that it did not make sense for the City to post a job describing a much
higher level of functions if it only wanted a clerk.  After Fletcher got the job with the
City, she contacted him several times, expressing her concerns that she was not
being sufficiently challenged. 
Harris did not expect anyone to be able to walk into a department and
assume all of the responsibilities of the job.  Fletcher had the capabilities and
background necessary to assume the responsibilities listed on the job
posting.  It would take a level of
commitment or time to master the functions.  The job posting was not for an office
manager position but was for an administrative assistant.

David Cox worked for the City for 16 years.  He testified that he started as an
Administrative Assistant III.  Job
postings should be very specific and accurate.  The job posting for Fletcher=s job called for a professional rather
than a clerk.  The posting was not
for a clerical type of job. 
Fletcher was being asked to do clerical duties that were inconsistent
with the original job posting.








Steve Van Manen testified that he is a Certified
Public Accountant in Victoria, Texas. 
He provided testimony on Fletcher=s
alleged damages.

Testimony of McMillian

McMillian testified that she controlled the
neighborhood Traffic Calming Section. 
She was part of the three-person panel that interviewed Fletcher for the
Administrative Assistant III job. 
They were looking for somebody with compositional skills, writing
skills, and organizational skills. 
The panel recommended Fletcher for the job.  McMillian thought that the person
selected for the job could have grasped the basics of the job within six to
eight weeks.  Fletcher did not reach
the level of proficiency that she expected Fletcher to reach. 

McMillian testified that she never called Fletcher
Aold,@
Astupid old woman,@ Asenile,@ or Aincompetent.@ 
At times, she was very impatient toward Fletcher.  She did not recall raising her voice
when it came to dealing with Fletcher, but she stated that she might have.

McMillian criticized Fletcher=s general lack of program
knowledge.  Employees needed to know
policies and procedures.  Fletcher=s job initially was to familiarize
herself with the program and develop an understanding of the program so that
she could apply policy at some point. 
Fletcher had access to data necessary to learn the program.  McMillian did not deny computer training
to Fletcher.  McMillian restricted
all employees=
abilities to attend meetings.  Only
essential personnel attended the meetings. 
McMillian did not allow Fletcher to attend city council meetings or
neighborhood traffic meetings because Fletcher=s
presence was not essential to the meetings.








McMillian performed Fletcher=s five-month EPE.  Fletcher rated unacceptable in many
areas. Fletcher had made errors that revealed a serious lack of program
knowledge.  McMillian suggested to
Fletcher that she upgrade her computer skills and program knowledge.  Fletcher=s
understanding of the program and ability to find information in the files was
deficient.  McMillian thought that
Fletcher might improve by gaining an understanding of program details.  McMillian suggested that Fletcher obtain
a better understanding of all program details and the computer database.  Fletcher was unable to interpret and
disseminate policies and information. 
McMillian suggested that Fletcher study the policy book that was kept in
her office.  Fletcher=s employee rating was 1.10, which was
unacceptable.  A rating between 3.0
and 3.6 was an Aeffective@ rating.  During the EPE, Fletcher did not give
McMillian any indication that she was unhappy with the position.  McMillian suggested that Fletcher look
for other job opportunities with the City.

On May 14, 1997, McMillian asked Fletcher to
accompany her to Mark Lupher=s
office for an EPE.  Fletcher asked
her if she could make a call, and she gave Fletcher permission to make the
call.  Fletcher made several calls.  The EPE was not performed because Fletcher
refused to come to the meeting. 
McMillian told Fletcher that the EPE could not be done because Lupher
had to leave the building.  Fletcher
received a rating of 1.05 in the EPE. 
Later that day, Fletcher could not stop crying and needed to leave.  Fletcher=s
calls were forwarded to another employee on that day.

On May 15, 1997, Fletcher was put on relief of
duty with pay.  Fletcher=s calls were forwarded to another
employee.  McMillian recommended
that the City terminate Fletcher=s
employment. When Fletcher was placed on relief of duty with pay, McMillian=s recommendation for termination was
working its way up the chain of command. 
The City terminated Fletcher, effective May 30, 1997.  Fletcher was terminated for refusing to
follow a directive, insubordination, and poor work performance.

Testimony of Miles, Garcia, Drabek, Rolen, Krenek, and Steward

Miles was an Administrative Assistant II in the
Traffic Calming Section.  Miles
testified that McMillian never did anything to humiliate or demean Fletcher.  Miles never heard McMillian call
Fletcher a Astupid
old woman.@  Fletcher felt like she was hired to do
something different from the job that she actually was performing.  On May 14, 1997,  Fletcher refused to go to the EPE with
McMillian and was very upset.   


Maria Garcia was an Administrative Assistant II in
the Traffic Calming Section.  She
testified that she did not give Fletcher orders and that  Fletcher Abucked
heads@ with
McMillian.  It was not easy to work
with Fletcher.  Garcia never heard McMillian
criticize or degrade Fletcher or call Fletcher a Astupid
old woman@ or Asenile.@








Gary Drabek was employed by the City as a Planner
in the Traffic Calming 
Section.  He testified that
he heard Fletcher raise her voice at times.  Fletcher had difficulties with
understanding the programs.  She had
problems with accessing information in the database.  Drabek never heard McMillian call
Fletcher Astupid@ or a Astupid
old woman.@  He never heard McMillian yell or shout
at anybody.

Thomas J. Rolen was a Deputy Director in the City=s Public Works Department when Fletcher
worked for the City.  Rolen
testified that McMillian made the recommendation to place Fletcher on relief of
duty with pay.  McMillian told the
facts supporting the recommendation to Lupher, and Lupher told the facts to
him.  Rolen reviewed the facts that
Lupher reported to him. Rolen signed the relief of duty with pay notification
that was given to Fletcher. 
McMillian made the recommendation that Fletcher=s
employment be terminated.  Rolen
agreed with the recommendation; and Jimmie Schindewolf, the Director of the
Public Works Department, made the ultimate decision to terminate Fletcher=s employment.  Fletcher had provided unsatisfactory
service during her probationary period and refused to follow directives, an
insubordination.

Eddie Michael Krenek, an attorney representing the
City in this case, testified on behalf of the City.  He testified on attorney=s fees issues.

Dwight Steward, an economist, also testified on
behalf of the City.  He testified
about Fletcher=s alleged
damages.

Standards of Review








The City=s
second, third, and fourth issues and McMillian=s
second and third issues attack the legal and factual sufficiency of the
evidence.  Fletcher had the burden
of proof on the challenged issues and obtained favorable jury findings on those
issues.  Consequently, to address
the City=s and
McMillian=s legal
sufficiency/no-evidence challenge, we must consider only the evidence and
inferences that tend to support the finding, disregarding any evidence or
inferences to the contrary.  Southwest
Key Program, Inc. v. Gil-Perez, 81 S.W.3d 269, 274 (Tex.2002); Garza v.
Alviar, 395 S.W.2d 821, 823 (Tex.1965); see Merrell Dow
Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997), cert.
den=d,
523 U.S. 1119 (1998).  We may
sustain a no-evidence challenge only when (1) the record discloses a complete
absence of a vital fact, (2) the court is barred by rules of law or of evidence
from giving weight to the only evidence offered to prove a vital fact, (3) the
only evidence offered to prove a vital fact is no more than a mere scintilla,
or (4) the evidence conclusively establishes the opposite of the vital
fact.  Merrell Dow
Pharmaceuticals, Inc. v. Havner, supra at 711 (citing Robert W.
Calvert, ANo
Evidence@ and AInsufficient Evidence@ Points of Error, 38 TEXAS L. REV.
361, 362-63 (1960)).  If there is
any evidence of probative force to support the finding, we must overrule the
no-evidence point.  Juliette
Fowler Homes, Inc. v. Welch Associates, Inc., 793 S.W.2d 660, 666
(Tex.1990); In re King=s
Estate, 244 S.W.2d 660 (Tex.1951).

In reviewing the factual sufficiency challenges to
the jury=s
findings, we must consider all of the evidence and determine whether the evidence
in support of the findings is so weak as to be clearly wrong and manifestly
unjust or whether the findings are so against the great weight and
preponderance of the evidence as to be clearly wrong and manifestly unjust.  Dow Chemical Com-pany v. Francis,
46 S.W.3d 237, 242 (Tex.2001); Pool v. Ford Motor Company, 715 S.W.2d
629 (Tex.1986); Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986); Ellis v. City
of Dallas, 111 S.W.3d 161, 164 (Tex.App. - Eastland 2003, no pet=n).  We cannot reverse merely because we
conclude that a preponderance of the evidence supports the opposing answer and
cannot substitute our opinion for that of the trier of fact and determine that
we would have reached a different conclusion.  Herbert v. Herbert, 754 S.W.2d
141, 144 (Tex.1988).  The fact
finder is the sole judge of the credibility of the witnesses and the weight to
be given their testimony and resolves any inconsistencies in the
testimony.  McGalliard v.
Kuhlmann, 722 S.W.2d 694, 697 (Tex.1986).  The jury may believe one witness and
disbelieve others.  McGalliard v.
Kuhlmann, supra at 697.

                                                          Hostile
Work Environment

In its first issue, the City argues that the trial
court erred by submitting an improper instruction to the jury on Fletcher=s hostile work environment claim.  In its second issue, the City argues
that the evidence was legally and factually insufficient to establish that the
City subjected Fletcher to a hostile work environment based on her age.








The TCHRA prohibits an employer from discharging
or in any other way discriminating against an employee because of the employee=s age.  Section 21.051; Wal-Mart Stores, Inc.
v. Canchola, 121 S.W.3d 735, 739 (Tex.2003).  The legislature intended to correlate
state law with federal law in employment discrimination cases when it enacted
the TCHRA.  Wal-Mart Stores, Inc.
v. Canchola, supra; NME Hospitals, Inc. v. Rennels, 994 S.W.2d 142,
144 (Tex.1999).  Texas state courts
have not addressed whether an age-based hostile work environment claim is
available under the TCHRA. 
Therefore, we examine federal case law on the issue of age-based hostile
work environment claims.  The Fifth
Circuit has not addressed whether a hostile work environment claim is available
under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. ' 621 et seq.  However, other circuits have recognized
that a hostile work environment claim is actionable under the ADEA.  Brennan v. Metropolitan Opera
Association, Inc., 192 F.3d 310, 318 (2nd Cir. 1999); Crawford v.
Medina General Hospital, 96 F.3d 830, 834 (6th Cir. 1996).  Likewise, federal courts in the Northern
District of Texas have recognized that such a claim exists.  Lacher v. West, 147 F.Supp.2d
538, 542-43 (N.D. Tex. 2001); see also Scally v. Burlington Northern &
Santa Fe Railway Company, No. 4:00-CV-1849-A, 2001 WL 1577626 (N.D. Tex.
2001).  Based on the reasoning of
these courts, we find that an age-based hostile work environment claim is
actionable under the TCHRA. 

The elements of an age-based hostile work
environment claim are as follows: (1) the employee belongs to a protected group
(40 years old or older); (2) the employee was subject to unwelcome harassment;
(3) the harassment complained of was based upon age; (4) the harassment
complained of affected a Aterm,
condition or privilege of employment,@
i.e., the harassment must be sufficiently severe or pervasive so as to alter
the conditions of employment and create an abusive working environment; (5)
respondeat superior, i.e., that the employer knew or should have known of the
harassment in question and failed to take prompt remedial action.  See Lacher v. West, supra
at 543; see also Watts v. Kroger Company, 170 F.3d 505, 509 (5th Cir.
1999); Crawford v. Medina General Hospital, supra at 834-35
(setting forth elements of sexual harassment hostile work environment
claim).  However, employees bringing
a hostile work environment case, such as in this case, alleging that a
supervisor with immediate (or successively higher) authority over the employee
harassed the employee need only satisfy the first four elements of the test
outlined above.  Watts v. Kroger
Company, supra; Lacher v. West, supra.  








To be actionable, the work environment must be
both objectively and subjectively offensive B
one that a reasonable person would find hostile or abusive and one that the
victim in fact did perceive to be so. 
Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998); Crawford
v. Medina General Hospital, supra at 835. Courts determine whether
an environment is sufficiently abusive to be actionable by reviewing all of the
relevant circumstances, including the frequency of the conduct, its severity,
whether it is physically threatening or humiliating or it is a mere offensive
utterance, and whether it unreasonably interferes with the employee=s work performance.  Butler v. Ysleta Independent School
District, 161 F.3d 263, 269 (5th Cir. 1998)(citing Faragher v. City of
Boca Raton, supra at 787-88); Nash v. Electrospace System, Inc.,
9 F.3d 401, 403-04 (5th Cir. 1993). 
Incidental or occasional age-based comments, discourtesy, rudeness, or
isolated incidents (unless extremely serious) are not discriminatory changes in
the terms and conditions of a worker=s
employment.  Butler v. Ysleta
Independent School District, supra at 269 n.3 (citing Faragher v.
City of Boca Raton, supra at 788).  

Even when a hostile environment is shown, the
plaintiff must establish that the workplace environment had the effect of
altering the terms and conditions of his employment.  Lacher v. West, supra at 544
(citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  Central to the court=s inquiry into a hostile environment
claim is whether the alleged harasser=s
actions have undermined the victim=s
workplace competence, discouraged him from remaining on the job, or kept him
from advancing in his career.  
Lacher v. West, supra (citing  Harris v. Forklift Systems, Inc.,
supra at 22; Shepherd v. Comptroller of Public Accounts, 168 F.3d
871, 874 (5th Cir.), cert. den=d,
528 U.S. 963 (1999); Butler v. Ysleta Independent School District, supra
at 270).  The availability of a
hostile work environment claim is intended to prohibit and prevent conduct Athat is so severe and pervasive that it
destroys a protected class member=s
opportunity to succeed in the workplace.@  Lacher v. West, supra at
544 (citing Shepherd v. Comptroller of Public Accounts, supra; Weller
v. Citation Oil & Gas Corporation, 84 F.3d 191, 194 (5th Cir. 1996), cert.
den=d,
519 U.S. 1055 (1997)).  The law=s overall goal of equality is not served
if a claim can be maintained solely based on conduct that wounds or offends,
but does not hinder an employee=s
performance.   Lacher v.
West, supra (citing Weller v. Citation Oil & Gas Corporation,
supra at 194).

The trial court submitted the following issue and
instructions on Fletcher=s
hostile work environment claim:

Do
you find that the City of Houston created a hostile work environment in
relation to Juanita Fletcher based upon her age?

 








Age
discrimination may also be shown by the creation of a hostile work
environment.  A hostile work
environment is shown when: (1) a supervisor (2) because of age (3) subjects an
employee to  (4) unwelcome conduct
(5) that is severe and pervasive, (6) creates an abusive work environment, and
(7) affects a term, condition, or privilege of employment.                                               


Certain
factors can be considered in assessing whether a work environment is hostile or
abusive: the frequency and severity of the abusive conduct, whether the conduct
was physically threatening or humiliating, and whether the conduct unreasonably
interfered with the plaintiff=s
work performance.  You must
determine from all the circumstances whether a reasonable person would find the
environment hostile or abusive, provided the plaintiff personally and
subjectively perceived the environment to be abusive.  A showing of Atangible
psychological injury@
is not required.

 

The City contends that the seven-element hostile
work environment instruction set forth above was improper and an incorrect
statement of the law.  We review a
jury charge under an abuse of discretion standard.  Texas Department of Human Services v.
E.B., 802 S.W.2d 647, 649 (Tex.1990). 
An abuse of discretion occurs only when the trial court acts without
reference to any guiding principle.  
Texas Department of Human Services v. E.B., supra.  Pursuant to TEX.R.CIV.P. 277, a trial
court is required to submit Asuch
instructions and definitions as shall be proper to enable the jury to render a
verdict.@  Trial courts are afforded considerable
discretion in deciding what instructions are necessary and proper in submitting
issues to the jury.  State Farm
Lloyds v. Nicolau, 951 S.W.2d 444, 451 (Tex.1997).  For an instruction to be proper, it must
(1) assist the jury, (2) accurately state the law, and (3) find support in the
pleadings and the evidence. Texas Workers=
Compensation Insurance Fund v. Mandlbauer, 34 S.W.3d 909, 912 (Tex.2000).








In this case, the trial court=s instruction accurately stated the
elements of a hostile work environment claim.  See Wal-Mart Stores, Inc. v.
Itz, 21 S.W.3d 456, 472 (Tex.App. - Austin 2000, pet=n
den=d)(setting forth elements of a hostile work
environment claim based on sexual harassment).  Viewed in their entirety, the trial
court=s hostile
environment instructions accurately stated the law in accordance with the
authorities cited above.  See
Watts v. Kroger Company, supra at 509; Crawford v. Medina General
Hospital, supra at 834-35; Lacher v. West, supra at
543.  The trial court did not act
without reference to any guiding principle.  Therefore, the trial court did not abuse
its discretion in submitting its instructions on Fletcher=s hostile work environment claim.  The City=s
first issue is overruled.

The City contends that the evidence was legally
and factually insufficient to support the jury=s
hostile work environment finding. 
Fletcher testified that McMillian screamed and yelled at her.  She said that McMillian called her Aincompetent,@
a Astupid old woman,@ an Aold
woman,@ and Asenile.@  Fletcher said that the abuse was part of
McMillian=s litany
that Ayou were
stupid, you were senile, you were old, you were incompetent.@ 
She said that the abuse was part of her Aday-to-day@ dealings with McMillian. Santopolo
said that he heard McMillian yell at Fletcher and call her a Astupid old woman@
two or three times.  He also heard
McMillian tell Fletcher that she was Aincompetent.@ 
Fletcher said that McMillian told her that younger employees were so
much better than she was.  Santopolo
and Ukaegbu said that Fletcher came into their offices crying after McMillian
had talked to her.  McMillian denied
that she ever called Fletcher any of the above names. However, the jury, as the
sole judge of the credibility of the witnesses, could have believed Fletcher
and disbelieved McMillian.  McGalliard
v. Kuhlmann, supra at 697.     

Fletcher said that McMillian frightened her and
upset her.  She said that McMillian
treated her like she was nothing. 
She said that she became depressed; that she could not eat or sleep; and
that she had violent migraines, asthma attacks, and constant coughing.  Fletcher received unacceptable
performance reviews from the City.  The jury could have concluded that the
harassment interfered with Fletcher=s
ability to do her job, undermined her 
workplace competence, and hindered her performance.

We hold that the evidence was both legally and
factually sufficient to support the jury=s
hostile work environment finding. 
Based on the evidence, the jury could have concluded that Fletcher was
subjected to severe and pervasive harassment and that the harassment altered
the conditions of her employment and created an abusive environment.  

The City=s
second issue is overruled.  In light
of our disposition of the City=s
second issue, we need not address the City=s
third and fourth issues. 
TEX.R.APP.P. 47.1.

                                               Intentional
Infliction of Emotional Distress

To recover on an intentional infliction of
emotional distress claim, a plaintiff must establish the following elements:
(1) that the defendant acted intentionally or recklessly; (2) that the
defendant=s conduct
was extreme and outrageous; (3) that the defendant=s
actions caused the plaintiff emotional distress; and (4) that the resulting
emotional distress was severe.  Hoffman
La-Roche, Inc. v. Zeltwanger, 144 S.W.3d 438, 445 (Tex.2004); GTE
Southwest, Incorporated v. Bruce, 998 S.W.2d 605, 611 (Tex.1999).  Extreme and outrageous conduct is conduct
that is Aso
outrageous in character, and so extreme in degree, as to go beyond all possible
bounds of decency, and to be regarded as atrocious, and utterly intolerable in
a civilized community.@  Hoffman La-Roche, Inc. v. Zeltwanger,
supra at 445 (quoting Twyman v. Twyman, 855 S.W.2d 619, 621
(Tex.1993) (quoting Restatement (Second) of Torts ' 46 cmt. d (1965))).  Liability does not extend to mere
insults, indignities, threats, annoyances, petty oppressions, or other
trivialities.  Hoffman La-Roche, Inc.
v. Zeltwanger, supra.

A claim for intentional infliction of emotional
distress does not lie for ordinary employment disputes.  GTE Southwest, Incorporated v. Bruce,
supra at 612.  To establish
an intentional infliction of emotional distress claim, an employee must prove
the existence of some conduct that brings the dispute outside the scope of an
ordinary employment dispute and into the realm of extreme and outrageous
conduct.  GTE Southwest,
Incorporated v. Bruce, supra at 613.  Such extreme conduct exists only in the
most unusual of circumstances.  GTE
Southwest, Incorporated v. Bruce, supra.

It is for a court to determine, in the first
instance, whether a defendant=s
conduct was extreme and outrageous. 
Hoffman La-Roche, Inc. v. Zeltwanger, supra.  But when reasonable minds may differ, it
is for the jury, subject to the court=s
control, to determine whether, in the particular case, the conduct was
sufficiently extreme and outrageous to result in liability.  Hoffman La-Roche, Inc. v. Zeltwanger,
supra.








Fletcher states in her brief that AMcMillian spent eight months engaged in
a relentless and abusive pattern of degrading, threatening, and humiliating
conduct towards Fletcher that went well beyond a mere employment dispute.@ 
In part, Fletcher relies on the following evidence to support her claim
that McMillian=s conduct
was extreme and outrageous: (1) that McMillian engaged in daily, humiliating
verbal confrontations, insults, and name-calling against Fletcher such as
calling her stupid, senile, and incompetent; (2) that McMillian often screamed
at her in front of other employees; (3) that McMillian, while knowing that
Fletcher=s
daughter was very ill at home, did not allow Fletcher to receive phone calls at
work but, rather, transferred Fletcher=s
phone line to another employee=s
phone line; (4) that McMillian demoted Fletcher; (5) that McMillian took away
her job duties and made her perform menial tasks; (6) that McMillian permitted
younger employees to give her orders; (7) that McMillian permitted younger,
less-qualified employees to perform her job duties; (8) that McMillian imposed
overly burdensome reporting requirements on her; (9) that McMillian refused to
allow her to attend key meetings or to conduct field work necessary to do her job;
(10) that McMillian did not allow her to receive essential e-mail
communications; and (11) that McMillian prohibited her, but not others, from
communicating with persons in other departments in the City.

            We
find that the evidence was legally insufficient to support a finding that
McMillian engaged in extreme and outrageous conduct.  Fletcher did not Aprove
the existence of some conduct that brings the dispute outside the scope of an
ordinary employment dispute and into the realm of extreme and outrageous
conduct.@  GTE Southwest, Incorporated v. Bruce,
supra at 613.  This case
is  nothing like the employees= Aden
of terror@ that
existed in Bruce.  Fletcher
argues that the denial of telephone access to her ill child took this case out
of the realm of an ordinary employment dispute.  However, the evidence showed that
Fletcher=s phone
line was transferred to another employee=s
line and that the other employee could give phone messages to Fletcher.  The transferring of the phone calls did
not constitute extreme and outrageous conduct.  Likewise, McMillian=s name-calling of Fletcher did not rise
to the level of extreme and outrageous conduct.  See Union Pacific Railroad Company
v.  Loa, 153 S.W.3d 162, 170-72
(Tex.App. - El Paso 2004, no pet=n).

McMillian=s first issue is sustained.  Therefore, we need not address McMillian=s other issues.  Rule 47.1.

                                                                    Interest
Issues








In its fifth issue, the City complains that the
trial court erred in awarding an improper amount of prejudgment interest in the
judgment.  The City also argues that
the judgment contains an excessive rate of postjudgment interest.  The trial court awarded Fletcher
prejudgment interest on the $259,000.00 in actual damages found by the
jury.  The following awards made up
the $259,000.00 amount: (1) $90,000.00 in past lost wages; (2) $69,000.00 in
diminishment in future wages; and (3) $100,000.00 in past mental anguish
damages.  The trial court awarded
prejudgment interest and postjudgment interest at the rate of 10 percent per
annum.

The City argues that Fletcher was not entitled to
recover prejudgment interest because she failed to plead a claim for
prejudgment interest.  Fletcher=s age discrimination claims against the
City were based on the TCHRA.  A
plaintiff is not required to plead a claim for prejudgment interest when the
claim is based on statute; a prayer for general relief will support an award of
prejudgment interest for statutory claims. 
Ralston Purina Company v. McKendrick, 850 S.W.2d 629, 638
(Tex.App. - San Antonio 1993, writ den=d)(citing
Benavides v. Isles Construction Company, 726 S.W.2d 23, 25
(Tex.1987)).  Fletcher=s prayer for general relief supported
her claim for prejudgment interest.

The City also argues that the trial court erred in
awarding Fletcher prejudgment interest on her recovery of $90,000.00 in past
lost wages.  However, an award of
prejudgment interest on past lost wages is proper under the TCHRA.  City of Austin v. Gifford, 824
S.W.2d 735, 743 (Tex.App. - Austin 1992, no writ).  

The City also argues that the trial court erred in
awarding prejudgment interest to Fletcher on her future damages B $69,000.00 in diminishment in future
wages.  An award of prejudgment
interest on Fletcher=s
future lost wages was improper.  Gorges
Foodservice, Inc. v. Huerta, 964 S.W.2d 656, 672-73 (Tex.App. - Corpus
Christi 1997, no pet=n).  The trial court erred in awarding
prejudgment interest on Fletcher=s
future economic damages.  Gorges
Foodservice, Inc. v. Huerta, supra.

The City also argues that the trial court erred in
awarding postjudgment interest at the rate of 10 percent per annum.  The City contends that a 2003 amendment
to TEX. FIN. CODE ANN. '
304.003(c) (Vernon Supp. 2004 - 2005) that lowered the minimum postjudgment
interest rate from 10 percent to 5 percent applies in this case.








In 2003, the legislature amended Section
304.003(c) to reduce the postjudgment interest rate from 10 percent to 5
percent in two different bills (Tex. H.B. 4, 78th Leg., R.S. (2003)  and Tex. H.B. 2415, R.S. (2003)).  The amendments had different effective
dates B June 20,
2003, and September 1, 2003.  See
Act of June 2, 2003, 78th Leg., R.S., ch. 204, '
6.01, 2003 Tex. Gen. Laws 847, 862 (effective date Sept. 1, 2003); see also Act
of June 1, 2003, 78th Leg., R.S., ch. 676, '
1, 2003 Tex. Gen. Laws 2096, 2096-97 (effective date June 20, 2003).  Each bill provided that the changes in
the law applied in cases Ain
which a final judgment is signed or subject to appeal on or after the effective
date of this Act.@  See Act of June 2, 2003, 78th
Leg., R.S., ch. 204, '
6.04, 2003 Tex. Gen. Laws 847, 862; see also Act of June 1, 2003, 78th
Leg., R.S., ch. 676, '
2(a), 2003 Tex. Gen. Laws 2096, 2097.

We assume, without deciding, that the effective
date of the amendment was June 20, 2003, the earlier of the effective
dates.  The trial court signed the
judgment in this case on March 31, 2003; and the judgment disposed of all
issues and parties.  Thus, the
judgment was signed and subject to appeal before the effective date of the
amendments.  City of Dallas v.
Redbird Development Corpo-ration, 143 S.W.3d 375, 388-89 (Tex.App. - Dallas
2004, no pet=n); In
re Kajima International, Inc., 139 S.W.3d 107, 113-17 (Tex.App. - Corpus
Christi 2004, orig. proceeding); Columbia Medical Center of Las Colinas v.
Bush, 122 S.W.3d 835, 864-66 (Tex.App. - Fort Worth 2003, pet=n den=d).  Therefore, Section 304.003(c), as
amended in 2003, does not apply in this case.  City of Dallas v. Redbird Development
Corporation, supra at 389; In re Kajima International, Inc.,
supra; Columbia Medical Center of Las Colinas v. Bush, supra.  The trial court did not award an
excessive rate of postjudgment interest.

We, therefore, sustain the City=s fifth issue to the extent that the
City complains of the trial court=s
award of prejudgment interest on Fletcher=s
recovery of $69,000.00 in diminishment of future earnings.  The trial court awarded prejudgment
interest in the amount of $119,423.83 on Fletcher=s
recovery of $259,000.00 in actual damages against the City.  The rate of prejudgment interest was
$70.96 per day.  The trial court
should have awarded prejudgment interest on the amount of $190,000.00
($259,000.00 - $69,000.00), at the rate of $52.05 per day.  Therefore, the prejudgment interest
awarded in the judgment is reduced from $119,423.83 to $87,652.20.








                                                                This
Court=s Ruling

The paragraph in the trial court=s judgment awarding prejudgment
interest on Fletcher=s
recovery of damages from the City is modified to read as follows:

It is further ORDERED, ADJUDGED, and DECREED that
Plaintiff Juanita Fletcher have and recover of and from Defendant City of
Houston the sum of $87,652.20 as prejudgment interest on the amount of
$190,000.00 of her actual damages  ($90,000.00
in past lost wages plus $100,000.00 in past mental anguish) calculated at the
rate of 10% per annum from August 4, 1998 (180 days after suit is filed) until
March 15, 2003 (1,684 days).  For
each day that accrues after March 15, 2003, until the date of this Judgment,
prejudgment interest shall accrue at the rate of $52.05 per day, for which
amount Plaintiff Juanita Fletcher shall have and recover of and from Defendant
City of Houston.   

 

The trial court=s
judgment in favor of Fletcher against the City is affirmed as modified by this
opinion.  The trial court=s judgment in favor of Fletcher against
McMillian is reversed, and judgment is rendered that Fletcher take nothing by
her claims against McMillian.                  

                      


TERRY McCALL

JUSTICE

 

June 9, 2005

Panel
consists of:  Arnot, C.J., and

Wright,
J., and McCall, J.











     [1]Equal Employment Opportunity Commission.